## JACOB BOPP ET AL. V. BEN D. HANSFORD.

Delivered February 9, 1898.

**1. Principal and Surety—Dismissal.**

In an action by a ward against a former guardian and his sureties to recover sums unaccounted for, the plaintiff may dismiss as to such guardian where it is shown that he is a fugitive from justice and can not be found. Rev. Stats., art. 1204.

**2. Guardian's Bond—Validity.**

The sureties upon a guardian's bond can not question its validity because the court made the order requiring a new bond to be given without citing the guardian to appear and show cause, when the court had jurisdiction of the matter and the parties acquiesced therein and voluntarily executed the new bond which was sued upon.

**3. Same—Judgment Upon, Conclusive, When.**

The judgment of the probate court fixing the amount due by a guardian to his ward upon his removal is conclusive both as against the guardian and the sureties upon his bond.

**4. Same—Judgment Not Conclusive, When.**

An order of the probate court fixing the amount of a guardian's liability to his ward upon his removal in the sum stated to be due by the guardian's final report is superseded by a subsequent adjudication made on final account, which shows a larger sum to be due.

**5. Same—Removal of Guardian—Order of Discharge.**

An order removing a guardian and directing him to turn over to the clerk of the court all moneys in his hands as guardian will not operate as a final discharge where the guardianship is not declared closed, but the court retains jurisdiction of the matter to the extent of enforcing its decree that the guardian account to his ward.

**6. Same—Conditional Signing.**

A surety on the bond of a guardian can not escape liability on the ground that he stated to the county judge that he would sign the new bond required to be given only on the understanding that it be executed by all the sureties to the old bond, one of whom did not sign it, when the judge told him that he must execute it unconditionally or he would not approve it, and the instrument was later presented to the judge for approval without mention of any reservation.

**7. Same—Burden of Proof.**

The burden of proof is upon one who has signed the bond of a guardian as surety to establish such facts as would relieve him from liability.

APPEAL from Dallas.   Tried below before Hon. W. J. J. SMITH.

*W. C. Kimbrough, John W. Thompson,* and *Hill, Dabney & Edmondson,* for appellants.

*Dickson & Moroney,* for appellee.

RAINEY, ASSOCIATE JUSTICE.—This suit was brought by appellee against Austin Sims, his former guardian, and appellants, the sureties on the guardian's bond, to recover $1920, alleged to have been received by said guardian and not accounted for.

Sims was not served, and filed no answer.   The appellants, sureties, answered specially, that Sims qualified as guardian by giving bond, etc.; that subsequently the court entered an order requiring Sims to give a

new bond, with which order Sims complied by giving the bond sued on; that the order requiring a new bond was void because no citation was issued and served on Sims prior to the making of said order, and that said bond is of no binding force.

Appellant Orr filed a special plea denying liability, because, he alleged, that when he signed same he had an understanding with the county judge that he was not to be bound on the bond unless it was signed by all the sureties on the first bond, which was not done, one of said sureties not signing the new bond. Under instructions from the court the jury returned a verdict for the plaintiff, for whom judgment was entered, and the defendants have appealed.

The trial court permitted plaintiff to dismiss as to Austin Sims. This action of the court is assigned as error, appellants insisting that no sufficient reason existed for the dismissal of the suit as to Sims, and as Sims was the principal in the bond, no judgment could be taken against them.

Plaintiff alleged that Sims' residence was not known, and his whereabouts could not be ascertained. The evidence introduced showed that he was a fugitive from justice; that he had been diligently searched for by the officers and could not be found. We think these facts bring the case clearly within the provision of article 1204, Revised Statutes, and no error was committed by the court in dismissing as to him.

The contention is made by appellants that the bond sued on is void and of no effect, because the court made the order requiring Sims to give a new bond, without citing him to appear and show cause why a new bond should not be required.

Sims qualified as guardian on July 6, 1895. On September 4, 1895, the court made an order requiring Sims to make a new bond, without citing him as required by law. In compliance with said order Sims and appellants executed the bond in suit, and the same was approved by the county judge. No effort was made to set aside said order, nor objections in any form made thereto. It was irregular for the court to have proceeded in this manner; but it had jurisdiction of the matter, and the parties having acquiesced therein and having voluntarily executed the bond, they will not be heard to question its validity. Murf. on Off. Bonds, sec. 161; Schouler's Ex. and Admr., sec. 142.

In the case of Richardson v. Overleese, 18 Texas Civil Appeals, 376, we held that the giving of an "additional bond" by order of the court was of no effect, because the law made no provision for such bond. Here the case is different. The law provides for the giving of a new bond.

The trial court permitted appellee to introduce in evidence a decree of the probate court of Dallas County, rendered April 6, 1896, upon the final account of Sims, as guardian, wherein Sims was adjudged to be owing his ward the sum of $1920. It is contended by appellants that this decree is "void and of no force and effect, it appearing that the aforesaid guardian Sims had prior to the making of said decree been discharged from said guardianship by the County Court of Dallas

County, Texas, sitting in probate," and that the court erred in admitting said decree in evidence.

On December 11, 1895, the ward filed an application with the probate court asking the removal of Sims as guardian on the ground of drunkenness. On December 23, 1895, after Sims was served with notice of the application for removal, the court entered an order removing Sims as guardian, and directed him to turn over to the clerk of the court all moneys in his hands as guardian. On January 10, 1896, Sims filed his final report as guardian.

The disabilities of the ward as a minor were removed by the District Court, and he filed exception to the final report of said guardian. On April 6, 1896, the court considered said final report, together with the exceptions made thereto, notice of said exceptions having been given to Sims' attorneys and the sureties on his bond, and rendered judgment adjudging Sims to be indebted to his ward in the sum of $1920, and said ward was authorized to demand and receive said sum from Sims upon his executing bond to pay the costs when said sum, or a sufficiency thereof, was collected (which bond was given). It was further ordered, that upon the approval of said bond no further action be had in the estate.

We are of opinion that the decree of December 23, 1895, was not a final discharge of Sims. While in the decree language was used declaring Sims' removal, it further declared that he should turn over to the clerk of the court all moneys held by him as guardian, but there was no order declaring the guardianship closed. The effect of this decree was that Sims was suspended from the duties as guardian, but the court retained jurisdiction of the matter to the extent of enforcing its decree that Sims should account to the ward for the funds in his hands. Article 2700, Revised Statutes, provides as follows: "If a guardian die, resign, or be removed, he or his legal representatives shall account for, pay, and deliver to the person legally entitled to receive the same, all the property of every kind belonging to the estate of the ward at such time and in such a manner as the court shall order, and in case of a refusal to comply with an order of the court to that effect, the same may be enforced by attachment and punishment as for contempt."

It will be noted that this provision of the law authorizes the court to require the guardian when removed to turn over the property in his hands to the proper party, and in case of refusal the court is empowered to resort to summary proceedings to enforce its decree. This power necessarily carries with it the power to determine what effects of the ward the guardian had in his hands; otherwise, as far as the probate court is concerned, the guardian would be his own judge in the matter. He could turn over much or little as he saw fit, and the court would be powerless to investigate and determine the extent of his liability. In Sheffield v. Goff, 65 Texas, 354, the court in construing article 2688, Revised Statutes 1879 (article 2770, Revised Statutes 1895), says that the authority given the probate court to order the guardian to deliver the

property in his hands to those entitled to receive it, "necessarily embraces the jurisdiction to determine what property is in his official custody." In support of their position the appellants cite Francis v. Northcote, 6 Texas, 185; Ingram v. Maynard, 6 Texas, 130; Fort v. Fitts, 66 Texas, 594; Davis v. Harwood, 70 Texas, 71; Timmins v. Bonner, 58 Texas, 558.

In these cases, in discussing the jurisdiction of the probate court, the rule is announced, that "the adjudication of matters in controversy between the estate and the former administrator, whose office as such has been finally determined, is not within the powers conferred." By a close analysis of the facts in those cases, we think it will be seen that they do not decide the exact point that determines this case. The case of Francis v. Northcote was a suit by an administrator de bonis non against a former administrator for devastavit. The petition alleged that the former administrator had long since gone beyond the jurisdiction of the court. It appeared that the administration had terminated before the beginning of the suit, but how terminated was not shown.

The case of Ingram v. Maynard, supra, is where, in 1844, the administrator resigned; in 1848 he voluntarily appeared in the probate court and applied for a final settlement of his account with the estate, and upon hearing he was found to be indebted to the estate, and suit was brought to recover on that judgment. The court held the judgment void for want of jurisdiction in the probate court, holding that under the law of 1844 in force when the administrator resigned he had the right to thus sever his connection with the estate, and that the probate court had no jurisdiction over his unsettled accounts, etc. It was further held that an administrator under the law of 1848 could not resign and become discharged until he accounts for and delivers the property in his hands to those entitled to receive it. The latter is the law in Texas to-day. See Revised Statutes, articles 2030-2036, inclusive.

The case of Fort v. Fitts, supra, is where the administrator of an estate had died, and no administrator de bonis non had been appointed. Those who heired the estate brought suit in the District Court against the bondsmen of the deceased administrator alleging devastavit. Exceptions to the jurisdiction were sustained, which was the sole question for consideration. The Supreme Court held that the District Court had jurisdiction, and "that it was not necessary to establish the devastavit in the County Court before proceeding upon the bond." The administrator having died, the probate court had evidently lost jurisdiction over him. It never had jurisdiction of the bondsmen.

The facts in the case of Davis v. Harwood, supra, show that on application of the heirs the administrator filed his final account, which was approved by the court at the November term, 1881. The estate was withdrawn from administration and partitioned among the heirs, except a small amount retained by the administrator to pay costs. In July, 1883, nearly two years after the estate had been withdrawn, an application was made to the probate court to have the said administrator make an additional inventory, which was granted by the court, but the order was

never complied with. In passing upon this order the court said, "after the estate was withdrawn from administration, the probate court had no authority to require the administrator to file an additional inventory, and its order to that effect was void," and if the administrator was indebted to the estate the heirs could bring a direct suit to recover.

Timmins v. Bonner, supra, is a case where an attempt was made by the ward after marriage to recover on the guardian's bond under articles 2695 and 2696, Revised Statutes 1879, the court holding that under the Constitution the Legislature could not confer such jurisdiction upon the probate court. The court states that the plaintiff was seeking to maintain the suit against the sureties "after nearly four years have passed from the time their principal ceased to be guardian, and nearly seven years after the guardian had ceased to perform any act as guardian except the preservation of the property in consequence of an application for him to give a new bond which had been made by one of the sureties," and further, that "Mrs. Timmins (the former ward) was married on September 26, 1876, and from that time forward Reed ceased to be either the guardian of her person or estate as fully as though upon final settlement he had been discharged, had been removed for cause, or had died. Pasch. Dig., sec. 6929; Act of August, 1876, Gen. Laws, p. 178.

"His relation to Mrs. Timmins after marriage, in reference to the estate which had formerly been in his hands, was that of debtor and creditor; and to enforce any right which she might have against him or his sureties, the sum claimed amounting to more than $1000, suit should have been brought against the principal and sureties upon the guardian's bond in the district court for the proper county."

It is true, as stated in the last case, that when a female ward marries, the guardian's power, as such, ceases; but the probate court does not thereby lose jurisdiction entirely over him. It can require him to render an account of his guardianship, pass judgment thereon, and require him to pay over what effects he has in his hands. Rev. Stats., art. 2764, et seq. This view is fully sustained by the following cases: Marlow v. Lacy, 68 Texas, 154; Fortson v. Alford, 62 Texas, 580; Alford v. Halbert, 74 Texas, 246; Young v. Gray, 60 Texas, 541. These cases were decided since the cases cited by appellants, and the language used in these opinions shows conclusively that the court did not intend to hold that the probate court did not have jurisdiction to pass upon the final account of a guardian "where the ward dies; or, if a female, marries," etc., and by analogy the same rule applies to guardians when removed.

In the case of Marlow v. Lacy, supra, Justice Stayton, who delivered the opinion in the case of Timmins v. Bonner, in discussing the time when the statute of limitation begins to run on the bond of a guardian, after referring to the statutes relating to the resignation, removal, and discharge of guardians, says: "Under these statutes, it is evident that the mere death of a ward does not operate within the meaning of the law a discharge of a guardian. The words 'resignation,' removal,' and 'discharge,' used in article 3206, Revised Statutes 1879, must be construed

in the light of the articles of the statute above referred to, which in effect declare when a resignation, removal, or discharge has occurred."

In Oldham v. Brooks, 25 Southwestern Reporter, 648, the litigation grew out of a contest over a guardian's final account filed after his removal. The question of jurisdiction was not raised, but the probate court assumed jurisdiction, as well as the Court of Civil Appeals.

No case has been cited, nor have we been able to find any, where the court has held in a case similar to this that the probate court did not have jurisdiction to pass upon the guardian's final account. We therefore hold that the court did not err in the particular complained of.

Having jurisdiction of the matter, the judgment of that court fixing the amount due by the guardian was conclusive against both the guardian and the sureties. Gray v. McFarland, 29 Texas, 163; Woerner on Guardianship, p. 149; Leaverton v. Leaverton, 40 Texas, 219; Am. and Eng. Enc. of Law, p. 864; Stoval v. Banks, 10 Wall., 588; Harrison v. Clark, 81 N. Y., 572; Gerould v. Wilson, 81 N. Y., 573; Brandt on Surety. and Guar., sec. 496.

Appellant's eighth assignment of error is: "The court erred in not permitting the defendants to introduce the order of the County Court of Dallas County, Texas, sitting in probate, on this estate, of date January 11, 1896, fixing the amount of the guardian Austin Sims' liability at $1650, all of which appears from defendant's bill of exceptions, etc.; * * * the said order being a prior order to the ones introduced, and not having been set aside, is superior to the second order."

On the trial appellants offered to introduce as evidence an order of the probate court of Dallas County, of date January 11, 1896, made in the matter of the guardianship of Ben D. Hansford, said order reciting that on December 23, 1895, Sims was removed from the guardianship of said estate of Ben D. Hansford, and an order then made commanded said Sims to pay over the moneys in his hands, which he had failed to do, and proceeded as follows: "It is accordingly ordered, adjudged, and decreed by the court that the said Austin Sims be, and he is here now ordered to pay into the registry of this court the sum of sixteen hundred and ninety-five and 50-100 dollars, said sum being the amount of money in his hands belonging to the minor B. D. Hansford, or be committed to jail for contempt, and the said Sims having still failed and refused to so pay over said money of his ward as commanded, it is further ordered by the court that the clerk of this court do now issue a writ of commitment," etc.

The object of this order was doubtless to secure to the ward the amount held by the guardian, stated by him in his final report to be $1695.60. We think it evident from the record that said order was not intended by the court as an adjudication of the final account, as said account had been filed only the day before, and sufficient time had not elapsed for the issuance and service of citation; besides, the effect of the subsequent action of the court on the final account shows there must have been no former adjudication. If such was the case, however, it was not binding

on the ward, as he was entitled to be heard on his contest, and the subsequent adjudication of the issues raised by the contest would supersede the former order.    Ingraham v. Rogers, 2 Texas, 465.

The only other question we deem it necessary to discuss is raised by the eleventh and twelfth assignments of error, which complain of the court for refusing to give to the jury the following special charge, to wit: "Gentlemen of the jury, you are told that if you believe from all the evidence that the defendant Chas. M. Orr at the time he signed the bond in question did so upon the express condition and stipulation that all the sureties on the old bond should sign it; and if you believe from the evidence that Frank Hamm was a signer of the old bond or the bond pending in the probate court at the time the present bond was given, and you believe that the said Frank Hamm did not sign the last bond, the one now in dispute, then and in that event you will find for the defendant Orr."

The proposition of appellants on this point is:    "Where a bond or note is signed by a party upon the express condition that certain other parties will sign also, and if they do not his name is to be erased from the instrument, and the others named do not sign, the party so signing upon this condition is not bound, and should be released from all liability by reason of his signature thereto."

Under this proposition appellants present the following statement of Orr's testimony on this point:    "My name is Chas. M. Orr.    Austin Sims came to me some time in September, 1895, and asked me to go on his bond as guardian of the estate of Ben D. Hansford; I went with him to look at the bond, which had been given on the 6th of July, 1895; I told him there were so many names on the bond there would be but very little liability in signing it, and that if all the parties on the old bond would sign it I would sign it;" and "I told Judge Nash I would sign the bond if all the parties on the old bond would sign it.    This was understood by Judge Nash and Austin Sims and Ben D. Hansford.    Hansford came down to the courthouse with Sims and myself in the buggy.    *    *    * Frank Hamm was on the old bond, and I relied on getting him on the new bond, but he did not sign the new bond.    *    *    *    I thought Judge Nash understood I was not to be liable on the bond unless the old sureties signed it."

Judge Nash testified as follows:    "I remember Mr. Orr saying he was willing to sign the bond if all the parties on the old bond would sign it. I told him positively that I could not and would not make any agreement whatever with him for him to sign the bond on any condition; that he must sign the bond unconditionally or not at all, and that I would not approve the bond unless he did sign it unconditionally.    I positively did not make any agreement or arrangement with anybody that he was not to be liable on the bond unless somebody else signed it."

Under our decisions the proposition advanced by appellants is not strictly correct, being stated too broadly.    If such an agreement is made with the obligee, or if he has notice that such an agreement exists, then

the surety signing with the condition that others are to sign would not be liable if such others did not sign.   Ballow v. Wichita, 74 Texas, 341.

The rule applicable to sureties on official bonds is stated by Mr. Murfree in his work on Official Bonds thus: "It is well settled law that a bond which is a complete and perfect instrument upon its face at the time of its delivery by the principal obligor to the obligee is binding upon all who have signed it, although one or more of the sureties may have executed and delivered it to the principal obligor, upon condition, that before it should be delivered to the obligee another person or other persons were to sign it.   It is valid although it shall not be signed by those other persons, unless indeed the obligee before he received it was aware of the condition upon which it was signed.   When one of two innocent persons must suffer a loss by reason of the act of a third person, that loss must fall upon the one who enabled that third person to cause it.   And sureties who intrust their principal with a bond signed by them for delivery to the obligee, make him their agent and are responsible for his acts.   In such cases the sureties are liable, although their principal disregards their conditions and instructions, unless indeed the obligee is guilty either of fraud or rashness in accepting such a bond."

In the case of McFarlane v. Howell, 43 Southwestern Reporter, 315, it is held, that "if the principal delivered it to the obligee, and the latter accepted and approved it, without notice of the condition upon which it had been signed by Smyth (surety), the latter will be estopped to urge the defense.   Dair v. United States, 16 Wall., 1.   But if, as alleged, the obligee had notice when he received and approved the bond, this would constitute a defense for Smyth."   See also Ordinary v. Thatcher, 41 N. J. Law, 403; Brown v. Probate Judge, 43 Mich., 501; Pawling v. United States, 4 Cranch., 81; Woerner's Am. Law of Guardianship, pp. 127, 128; 24 Ind., 481.

If Judge Nash, when the bond was delivered to him for approval, was then informed that Orr did not intend to be bound unless Hamm signed the bond, then Orr would not be liable.   On the other hand, if when the bond was delivered for approval Judge Nash did not understand that there was any condition as to Orr's signing the bond, then Orr would be liable, regardless of what agreement he had with Sims.   Schouler's Exec. and Admr., sec. 142.   The charge requested is defective and not applicable to the case, in that it does not limit Orr's right to be discharged from the liability to an express condition or understanding had with the county judge when said bond was delivered to said judge for approval.   Under this charge the jury would have been authorized to find for Orr, if they believed he signed with the understanding that others were to sign, and they had not, although the county judge knew nothing of the understanding.   If it should be thought that the charge, though defective, was sufficient to require a proper charge, we are of the opinion that the court did not err, as the evidence was not sufficient to warrant a charge on this issue.

There is no evidence going to show that Orr told the county judge

after he had signed the bond that he signed it conditioned that others would sign it before he was liable thereon. Orr's statement is, "I told Judge Nash I would sign the bond if all the parties on the old bond would sign it." Judge Nash testified that he refused to receive and approve the bond on any such condition. Orr did sign the bond, and it was filed and approved. There is nothing to show that it was delivered to the county judge to be held by him in escrow. Nor was there any testimony showing that when it was *delivered for approval* the county judge was informed of any condition connected therewith. The county judge having told Orr he would not approve the bond with any condition attached, which statement is not contradicted, and Orr having stated he would not sign without others signing it, it is fair to presume that Orr signed without any reservation, and when the bond was presented to the county judge for his approval he was warranted in believing that Orr had so signed it. Again, Orr does not testify positively that Judge Nash understood any such arrangement. When pressed on this point, he said, "I thought Judge Nash understood I was not to be liable on the bond unless the old sureties signed it." In order to be relieved of liability when one has signed a bond, the defense should be clearly established. Orr having signed the bond and made it possible for an innocent party to suffer, the burden was on him to establish such facts as would relieve him from liability. In this he has failed. We are of the opinion that the evidence on Orr's plea was not of such probative force as required a charge on that point.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.