### AMERICAN SURETY CO. OF NEW YORK v. FITZGERALD.

#### No. 10819.

Court of Civil Appeals of Texas. Dallas.

Jan. 24, 1931.

Rehearing Denied March 7, 1931.

Additional Conclusions of Facts March 9, 1931.

Bartlett, Thornton & Montgomery, of Dallas, for appellant.

Crane & Crane, of Dallas, for appellee.

LOONEY, J.

M. B. Webster was appointed guardian of the person and estate of his daughter, Alice Webster, a minor, by the Surrogates' Court of the county and state of New York, where they resided, and thereupon, on application to the probate court of Dallas county, was appointed guardian of the minor's estate in Texas, as authorized by chapter 13, title 69, R. S. 1925 (articles 4285–4289). The estate consisted of cash, $764.88, and an improved lot in the city of Dallas, valued at $40,000, incumbered with a lien indebtedness to the extent of $2,061.44, and yielding gross revenue of approximately $400 per month. Webster's bond was fixed at $6,000, which he gave with the American Surety Company of New York, appellant, as surety, and duly qualified and received letters of guardianship on May 13, 1921.

On August 9, 1928, Hugh Nugent Fitzgerald, the minor's grandfather, as next friend, filed in the cause a petition for the removal of Webster as guardian, and for the appointment of himself guardian to fill the vacancy. Webster was cited to answer the petition, in the manner provided by statute for service upon nonresidents, but he neither appeared nor answered. Grounds alleged in the petition for removal are reflected by the court's findings, to the effect that Webster failed and refused to make any accounting for moneys received from the date of his qualification, May 13, 1921, to January 1, 1923; that he did not expend, on the ward, the amounts reported in the several accounts filed, but spent substantially less and had misapplied and embezzled funds belonging to the es-

tate; therefore, he was removed as guardian, his letters were revoked, and he was ordered by the court to account for all property belonging to the estate, and deliver same forthwith to Hugh Nugent Fitzgerald, whom the court appointed guardian.

Prior to the filing of the petition for the removal of Webster, the ward changed her residence from New York to Texas, and was at the time residing with her grandfather in Austin, Tex.; the order appointing Mr. Fitzgerald guardian recites: "That the said minor is over 14 years of age, has entered her written appearance herein, wherein she has made choice and selection of him (Mr. Fitzgerald), as the guardian of her estate in Texas."

On December 12, 1928, Mr. Fitzgerald, guardian, filed in the proceedings in Dallas county a petition in the nature of a bill of review, to re-examine and set aside certain orders of court hereinafter mentioned, and for a re-examination and restatement of the accounts of Webster, from the beginning to the end of his guardianship. Both Webster and appellant, his surety, were made parties, the former was served with notice in New York, in the manner provided by statute for service of process on nonresidents, but he neither appeared nor answered, appellant pleaded misjoinder of parties, the plea was sustained, and the proceedings dismissed as to it, without prejudice, however, to the rights of the minor.

On hearing, the court found, among other things, that Webster failed to account for certain cash items received as guardian, to wit, the sum of $764.88 from the registry of court, and $600 collected as bonus for transfer of lease; failed to render any account of moneys received or disbursed from the date of his qualification, May 13, 1921, to December 31, 1922; failed to support with vouchers items alleged to have been expended on behalf of the ward; failed to disclose the true condition of the estate for periods the accounts filed purported to cover, in that he did not give a true and correct statement of all moneys received, nor a true and correct account of disbursements; that the orders of court approving accounts were made upon the erroneous assumption that they were true, correct, and supported by proper vouchers, whereas in fact they were grossly inaccurate, and not supported by vouchers or other evidence showing their correctness. On these findings the court set aside the orders approving accounts, ordered a restatement of the accounts, held that, because Webster's failure in these respects had caused expense and loss to the estate, he had forfeited the 5 per cent. commission on receipts and disbursements allowed by law.

After a re-examination, from the beginning to the end of the guardianship, the court restated the accounts, found that Webster

was indebted to the estate of the minor, on November 13, 1928, the date of his removal, the sum of $17,216.29, the net balance unaccounted for, of which he had deposited in court, with his final report, only $238.58, leaving balance due and owing the estate the sum of $16,977.71. The following paragraph concluded the judgment: "The said M. B. Webster is hereby ordered and directed to at once pay over to the petitioner, Hugh Nugent Fitzgerald, as guardian of the estate of Alice Webster, a minor, the sum of Sixteen Thousand Nine Hundred Seventy-Seven and 71/100 Dollars ($16,977.71), and upon compliance with this order said M. B. Webster and the surety upon his bond shall be discharged from further liability therein."

Webster failing to comply with the order of court, this suit was instituted by Mr. Fitzgerald, guardian, against the American Surety Company, surety; Webster, being a nonresident, was not made a party, the case was tried before the court February 19, 1930, and resulted in judgment for Fitzgerald, guardian, against appellant, on its bond, for the sum of $6,364, with 6 per cent. interest and all costs, from which this appeal is prosecuted.

The questions hereinafter discussed were properly raised and briefed.

Appellant contends that the probate court of Dallas county, after having removed Webster as guardian, was without jurisdiction to appoint Fitzgerald his successor, or to call Webster to an accounting for his stewardship as guardian; hence the judgment upon which this suit is founded was and is null and void. The reasons stated for this position are these: That the statute under which Webster was appointed guardian in Texas is one of comity, and recognizes the right of a guardian of an estate in another jurisdiction to exercise in this state his authority as domiciliary guardian; that the general statutes of this state controlling guardianships are not applicable in such a case; that the probate court of Dallas county was not concerned with the administration of the guardianship in Texas, except to protect local creditors; that the statute does not require a nonresident guardian to account in this state for property removed to the state of domicile, that being a matter for the probate court of that state; that no person, other than the domiciliary guardian, was entitled to letters in this state; that no person was eligible to be appointed his successor by the Texas court, unless such person had been first appointed successor by the court of primary jurisdiction; that Webster was responsible alone to the Surrogates' Court of New York, and must make an accounting to that court, whereas the judgment of the probate court of Dallas county required Webster, the domiciliary guardian, to account to it; that no credi-

tor had complained, their rights were not involved, and, as the only debt against the estate was less than 10 per cent. of the value of the land by which it is secured, the right of the guardian to remove property of the ward to the state of domicile should be recognized as if no debt actually existed. Therefore, as the probate court of Dallas county was without jurisdiction either to appoint Fitzgerald guardian, after the removal of Webster, or to examine and restate Webster's accounts, its judgment, upon which this suit is based, was and is null and void.

We cannot accept this view of the case. Webster, as nonresident guardian, was required to take the oath and give the bond required of guardians generally, and, in our opinion, was controlled by the statutory provisions, applicable to guardianships as in other cases, except those peculiar to a guardianship of this class. His appointment by the Surrogates' Court of New York gave him no authority over the ward's estate in Texas; his authority in this respect resulted exclusively from his appointment as guardian by the probate court of Dallas county, whose jurisdiction he invoked, and by this token obligated himself to administer the estate under its supervision and direction, and in obedience to Texas laws.

Webster's bond not only protected local creditors of the estate, but the ward as well. He and surety are liable for property of the estate removed from Texas and wrongfully appropriated, and the jurisdiction of the probate court of Dallas county to compel an accounting is, in our opinion, adequate. In re Guardianship of Caskey, 183 Iowa, 1323, 166 N. W. 751.

The orders of the probate court, removing Webster, canceling his letters of guardianship, and appointing Fitzgerald successor, were not appealed from, are final judgments, and therefore immune from collateral atack.

The court, having power to appoint Webster, nonresident guardian of the ward's estate in Texas, retained jurisdiction to control his activities, to remove him for cause, and to appoint his successor. See Whitfield v. Burrell, 54 Tex. Civ. App. 567, 118 S. W. 153, 156; Marlow v. Lacy, 68 Tex. 154, 2 S. W. 52; Logan v. Robertson (Tex. Civ. App.) 83 S. W. 395, 397; Usury v. Usury, 82 Ga. 198, 8 S. E. 60.

We therefore overrule the assignments and propositions that challenge the jurisdiction of the probate court of Dallas county in the respects mentioned above.

Appellant also insists that the bill to revise and correct certain orders of court, to examine, restate, and surcharge Webster's account, was not authorized by the bill of review statute (article 4328), in that Webster had filed no report covering part of the period of his guardianship; several annual accounts filed by him had not been acted upon by the court; no inventory or report of certain property belonging to the ward had been made; that the court had rendered no decision or judgment in regard to these matters, hence as to these there was nothing to review; and, as the probate court was without jurisdiction of at least a part of the subject-matter essential to the determination of the amount the court found was owing by the guardian to his former ward, that the judgment is void in part, and, being indivisible, is void in its entirety.

Bearing upon this question, the record discloses that, on March 20, 1924, Webster filed his first annual report, in which, without giving an itemized statement of receipts and disbursements from the inception of the guardianship, he stated the "condition (of the estate) as of January 1, 1923," in general terms, that is, credits were given as follows: "Real estate $40,000.00, cash $285.06, less an encumbrance on real estate of $2061.44, net assets as of that date $38,223.62"; this was followed by a statement of certain receipts and disbursements from January 1, 1923, to December 31, 1923; and on March 14, 1925, filed his annual account for 1924; on April 12, 1926, for 1925; on March 21, 1927, for 1926; March 5, 1928, for 1927; and, after being removed on November 13, 1928, in compliance with the order of court, filed as his final account covering the period from January 1, 1928, to November 30, 1928, and deposited in the registry of court the sum of $238.58 as the amount of cash on hand belonging to the estate. The first four accounts above mentioned were approved by the court, the last two, however, were never acted upon.

Appellant's position, in short, is that it was not permissible for Fitzgerald in the same petition to seek revision and correction of decisions and orders of court, and to seek an accounting as to matters not acted upon by the court, such as receipts and disbursements not reported, and accounts on file but never acted upon.

We find no objection to this method of procedure. Webster could not have been prejudiced. Besides, the judgment of court is final and not subject to collateral attack. However, if all indebtedness found by the court be eliminated, except the amount found on revision and correction of prior orders approving accounts, there will remain sufficient to more than absorb the amount of appellant's liability under the bond. As before shown, the first account filed by Webster, March 20, 1924, gave a general summary and stated the condition of the estate as of January 1, 1923. It was his duty, under the statute (article

4225, R. S. 1925), to include in this account all property belonging to the ward not previously inventoried, and to give a complete account of receipts, disbursements, and all property and money on hand. His report implied as much, and, relying upon this fact, the court was induced to make an erroneous order approving the same, whereas on revision and correction found that, after allowing all credits to which Webster was entitled, he had on hand January 1, 1923, $5,358.22 belonging to the estate, instead of the sum of $285.06, as reported by him. The court also approved accounts for 1923, 1924, 1925, and 1926, but these orders of approval were set aside, and on revision and correction the court found that Webster had on hand January 1, 1927, the sum of $16,596.51 instead of $46 as reported by him. Therefore, it can be conceded, which we do not, that the order of court ascertaining Webster's indebtedness to the estate was erroneous in part, for reasons stated; still the amount found as the result of the revision and correction of accounts approved by orders of court, excluding other items, is more than sufficient, twice over, to absorb the amount of the bond sued upon.

This contention of appellant is based upon the decision of the Commission of Appeals in Yates v. Watson, 221 S. W. 966, 967; the language in point is as follows: "The amount paid out as attorney's fees was never inventoried or appraised as part of the estates of the minors, or referred to directly or indirectly in any of the orders of the court." Further the court said: "No decision, order, or judgment was made or entered by the court concerning it; hence there was nothing relating to it to review in this suit." The precise situation presented in the Yates-Watson Case is not the situation here, for it seems that no effort was made in that case, as was attempted in the proceedings under review, to have the guardian make an additional and correct accounting. On that point, the Commission of Appeals said: "Neither an additional nor a new inventory was sought in any of the proceedings in this case." This language implies that, in the opinion of the commission, it was not only proper in a bill of review proceeding to require additional or a new inventory or an accounting, but that such was in fact necessary.

The holding of the Commission of Appeals, as to the scope of a bill of review, indicated by the language employed, is based upon an expression found in Nicholson v. Nicholson, 59 Tex. Civ. App. 357, 125 S. W. 965, 967, which cites as authority Francis v. Northcote, 6 Tex. 186, and this in turn cites Ingram v. Maynard, 6 Tex. 130. So, when we trace to its origin the doctrine announced by the commission in Yates v. Watson, supra, we find that it had its birth in the midst of facts and under controlling statutes, dissimilar to those involved here; in truth, the earlier decisions were prior to the enactment of the review statute, article 4328, under which the proceedings being considered were prosecuted. But, aside from this, we are of opinion that the scope of a bill of review under the statute in question, as limited by the language in Yates v. Watson, quoted above, is in sharp conflict with the doctrine announced by the Supreme Court on the same subject.

The purpose of a bill of review, originally, was to obtain a new trial and a revision of an order of court for error or defect apparent upon the face of the proceedings. This is announced in R. C. L. vol. 10, p. 571, § 360, as follows: "The simplest form of the bill of review is that which lies for error apparent. This bill has been denominated the 'pure bill of review.' Such a bill sets up no new facts or newly discovered matter, and its sole purpose is to obtain a review and reversal of the decree for some error or defect on the face of the proceedings, or, as is said, for error apparent. On a bill of review for error apparent, the court will not consider or correct any error resulting from an erroneous inference of fact or conclusion from the evidence. The only questions open for examination in such a case are such questions of law as arise on the pleadings, proceedings, and decree exclusive of the evidence." Apparently, this is the rule applied by the Commission of Appeals in Yates v. Watson, and announced by the Court of Civil Appeals in Nicholson v. Nicholson, but, as will be seen, is not the rule approved by the Supreme Court.

In Young v. Gray, 60 Tex. 541, a bill of review was brought under this statute to inquire into and have re-examined and reviewed the action of the court in passing upon the final account and settlement of a guardian, among other things, the bill sought to have the guardian make a more complete exhibit of the estate, alleging that the same had not been fully accounted for. In passing upon the matter, the court, among other things, said: "But in so far as the bill of review seeks to inquire into, and have re-examined and revised, the action of that court in passing upon the final account and settlement of the guardian, such action being within the power and jurisdiction of that court, is a proper subject of investigation there, and of consideration and revision, on appeal, in this form, by the district court." In Jones v. Parker, 67 Tex. 76, 79, 3 S. W. 222, 224, Judge Gaines, for the Supreme Court, said: "It has been held by our courts, in several decisions upon this [Article 4328] and similar statutes, that a bill of review, under our system, need not conform to the rules, and is not limited to the restrictions, of the equitable practice as applicable to that remedy"—citing Janson v. Jacobs, 44 Tex. 574; Seguin v. Maverick, 24 Tex. 526, 76 Am. Dec. 117.

In Janson v. Jacobs, 44 Tex. 575, 576, the court said: "It is not our opinion that a petition formed under this article [the same here involved] must conform to the requisites of a bill of review in a court of chancery, nor do we think that the error to be shown in such a petition must necessarily be error of law apparent on the face of the proceedings. If the petition sets forth with reasonable certainty the proceedings sought to be revised, and shows that there was error therein, whether it be error of law, or error growing out of fraud or mistake, and only apparent in the light of facts not then made known to the court, it contains enough to enable a party interested to maintain the application. This view of the statute is borne out by a reference to former statutes on the same subject." Thus it is apparent that the limited scope of a bill of review brought under this statute, given in Yates v. Watson and Nicholson v. Nicholson, supra, was not authorized by the doctrine announced by the Supreme Court on the subject.

■ Appellant contends further that the finding of the probate court of Dallas county to the effect that Webster was indebted to his former ward in the sum of $16,977.71 was a judgment in personam against a nonresident on personal service had in the state of New York rendered in the absence of a personal appearance or of any proceeding in rem against property; and, further, the court, having removed Webster from the guardianship, acquired no jurisdiction of his person by the service of a nonresident notice. For these reasons, appellant insists that the judgment of the probate court, upon which the suit is based, was and is null and void.

We dissent from this view. The proceedings filed by Fitzgerald to review the order of the probate court and for a full accounting by Webster as guardian was neither an action at law nor in equity, but simply a summary proceeding for the ascertainment of the delinquency, if any, of Webster as guardian, as a predicate for the institution of suit on his bond for the recovery of the amount the court found he was due the estate. Fort v. Fitts, 66 Tex. 595, 1 S. W. 563; Whitfield v. Burrell, 54 Tex. Civ. App. 567, 118 S. W. 153, 156; Kingsberry v. Hutton, 140 Ill. 603, 30 N. E. 600, 601; Chapman v. American Surety Co., 261 Ill. 594, 104 N. E. 247, 250, 251.

■ Webster, as an officer of court, was bound to settle his account as guardian when and as directed by the court, having voluntarily invoked its powers by seeking and obtaining appointment as nonresident guardian of the ward's estate in Texas, submitted in advance to the laws of the state, including the statute prescribing the method, employed in this case, of obtaining service of process on him as a non-resident. See Spencer v. Houghton, 68 Cal. 82. 8 P. 679, 683; Trumpler v. Cotton,

109 Cal. 250, 41 P. 1033, 1035; Fitzsimmons v. Johnson, 90 Tenn. 416, 17 S. W. 100; Michigan Trust Co. v. Ferry, 228 U. S. 346, 33 S. Ct. 550, 57 L. Ed. 867. Notwithstanding Webster's removal as guardian, the court retained jurisdiction to determine what, if any, effects he had belonging to his former ward, and to require delivery of same to Mr. Fitzgerald successor in guardianship. The judgment of the probate court in the proceedings is as conclusive and binding upon appellant, surety, as upon Webster, guardian, and, in our opinion, furnished sufficient basis for the suit and judgment. Bopp v. Hansford, 18 Tex. Civ. App. 340, 45 S. W. 744, 746; Sheffield v. Goff, 65 Tex. 354; Hornung v. Schramm, 22 Tex. Civ. App. 327, 54 S. W. 615; Gray v. McFarland, 29 Tex. 169; Stewart v. Morrison, 81 Tex. 396, 399, 17 S. W. 15, 26 Am. St. Rep. 821; Whitfield v. Burrell, 54 Tex. Civ. App. 567, 118 S. W. 153, 157; Fahey v. Boulmay, 24 Tex. Civ. App. 279, 59 S. W. 300; Minchew v. Case (Tex. Civ. App.) 143 S. W. 366; Holman v. Ward (Tex. Com. App.) 288 S. W. 148.

■ Appellant insists that, as the probate court of Dallas county authorized Webster to remove from Texas to the state of New York the sum of $764.88 belonging to his former ward, jurisdiction of that portion of the estate was surrendered, and the court was without authority, in restating the guardian's account, to charge him with that sum.

We do not assent to the correctness of the proposition that the order of court permitting Webster to remove the fund to the state of his domicile absolved him, on a proper accounting, from showing a legal disbursement thereof; but, if appellant should be correct in this contention, yet the amount removed under the order of court is so small in comparison with the amount removed without authority, and in violation of the statute, that the result of the litigation could, in no event, be affected thereby.

The statute (article 4288, R. S. 1925) reads: "There shall be no removal from the State of any of such property, until all debts known to exist against the estate have been paid, or the payment thereof secured by bond payable to the county judge and approved by the clerk."

Webster violated this statute; his only authority for the removal of property was an order entered June 3, 1921, authorizing the removal of the sum of $764.88. The estate at that time was indebted, no bond was given as required by statute, and throughout Webster's tenure as guardian the estate was indebted; at first the amount was $2,061.44, which, instead of being paid or reduced, was permitted by him to increase, and at the time the court removed him from the guardianship had increased to the sum of $3,054.

1110

Having considered all assignments and propositions urged for reversal, and finding no error, the judgment of the court below is affirmed.

Affirmed.

### Additional Conclusions of Facts.

At the request of appellant, the following additional conclusions of facts are made: (1) Before M. B. Webster was appointed guardian of the ward's estate in Texas, he had been duly appointed guardian of her person and estate in the state of New York, at that time the state of her domicile, and the American Surety Company of New York became surety on his bond as such domiciliary guardian, in the sum of $29,000. (2) Prior to the filing by appellee of the bill of review herein, no order was made by the probate court of Dallas county on annual accounts filed by Webster for any period subsequent to December 31, 1926. (3) The appointment of Hugh Nugent Fitzgerald, guardian of the ward's estate in Texas, was made after the removal of Webster by the probate court of Dallas county and in the same proceedings.