R. L. Graves, of Brownfield, for appellants.

Jas. J. McGowan, of Brownfield, for appellees.

## BROWN et al. v. SHAMBURGER et al.
### No. 4701.

Court of Civil Appeals of Texas. Amarillo.
Feb. 8, 1937.

HALL, Chief Justice.

As made by the pleadings and uncontradicted evidence, this is a case where C. L. Brown and his wife owned lots 1 and 2, in block 55, in the town of Brownfield. They had four children, Janet and Charlie, minors; Marie; and a married daughter, Mrs. Louellen McCoy. They occupied said lots as a homestead. After the death of Mrs. C. L. Brown, the property which constituted the homestead, and which was community estate of Brown and wife, continued to be the homestead of Brown and his children. Mrs. Brown died in May, 1929, and soon thereafter Brown, who had been appointed guardian of his minor children, entered into an oral agreement with C. B. Markham and C. D. Shamburger, a lumber man, in substance as follows: That Brown would cause the property to be conveyed without any consideration whatever unto Markham, who would in turn create a mechanic's and materialman's lien upon it to secure the sum of approximately $1,000 in favor of Shamburger, who would make some improvements upon the property and pay the taxes thereon. It was understood at the same time that Brown and his children would still continue to occupy the property as the owners thereof, and that thereafter the property was to be reconveyed to the said C. L. Brown, or to Brown and the owners thereof, after the mechanic's lien had been fixed.

It is charged that this agreement was a simulated sale to Markham in an effort to avoid the homestead rights of the children, and for the purpose of attempting to es-

tablish a lien upon homestead property contrary to the Constitution and laws of the state. Brown and his children and Lawrence McCoy, the husband of Louellen McCoy, filed this suit to cancel the deed made to Markham, together with the lien created by Markham, and to remove cloud from their title, praying that the entire transaction be set aside upon the ground of fraud.

Thereafter it appears that Shamburger and C. D. Shamburger, Inc., entered into a materialman's lien contract with Markham and wife to secure the sum of $1,000 to be expended by Shamburger Company in improving the property. Thereafter suit was filed against Markham, judgment was recovered foreclosing the mechanic's and materialman's lien, order of sale was issued under which the property was sold and purchased by C. D. Shamburger Lumber Company. These facts were alleged by the defendants, and they further set up the fact that the property was leased to C. L. Brown and his family, plaintiffs in this suit, who occupied it as the tenants of the lumber company, paying rent therefor for several months.

That the property was being occupied by Brown and his children as a home at the time the agreement was made with Markham and the property was conveyed to him, and also at the time the attempt was made by Shamburger Lumber Company to fix a lien thereon, is not questioned. The uncontradicted testimony shows that it was their homestead, and had been for a number of years prior thereto, and is still so used.

Brown testified that he had lived on the property for eighteen years; that his family at present consisted of three girls and one boy; that they had never moved out of the property nor abandoned it, and owned no other property; that on June 7, 1929, he conveyed the lots to Markham in order to enable him to get a loan on the place; that there was no consideration for the deed, and he and his family were in possession of the house when the improvements were made. That this was a simulated sale, made without consideration, and void under the Constitution, article 16, § 50, is too plain to require the citation of authorities. Brown further testified that he talked with Tom May, who was in charge of Shamburger's lumber yard, representing Shamburger, Inc., at Brownfield at that time, and Mr. W. W. Price, a loan broker, and was told to place the improvements on the property and a loan would be procured

and Shamburger paid out of the proceeds of the loan. He further stated that he never did get the loan, and that May knew all the facts concerning the deal made between the witness and Markham; that they talked it over together before anything was done.

Markham testified that he knew Brown and Tom May; that there was nothing whatever paid Brown for the execution of the deed; that Brown told him he wanted to improve the place and get money to pay the taxes, and the only way he could do it was to deed it to somebody who could get a loan; that he tried to get the loan through; that they met May in front of the courthouse and he said: "Price guaranteed that loan to go through. You boys fix the house and Shamburger Lumber Company will carry the bill until the loan comes through." Markham testified that he never paid Brown anything for the property, although the deed recites a consideration of $781.25 cash.

Tom May testified that in 1929 he was local manager for the Shamburger Lumber Company, and that C. B. Markham executed a mechanic's lien upon the Brown property to the company; that at the time he thought Markham was moving into and was fixing it up for himself; that after the loan failed to go through the company was to accept $25 per month to be paid by Brown; that Brown made six or eight payments, and the payments were then cut to $12.50 per month; that he had known Brown since 1917 and Brown had resided on the property with his family during all that time. That the property was conveyed by Brown to Markham in order to enable Markham to obtain a loan and create a materialman's lien is unquestioned.

The record shows that before making the deed to Markham, Brown, as guardian, applied to the probate court of Terry county for an order authorizing the sale for the purpose of obtaining funds to educate and maintain the minors; that he reported the sale to Markham as having been made for the sum of $468.75 cash for the minors' three-eighths interest. The materialman's lien created by Markham and wife is dated the 11th day of July, 1929.

Tom May denied the testimony of Brown to the effect that he knew the details of the transaction had between Brown and Markham which resulted in a conveyance of the property from Brown to Markham for the purpose of procuring a loan. He further testified that in 1929 he was local manager for the Shamburger Company at Brown-

field, and as such local manager he entered into the contract with Markham for a materialman's lien upon the lots in question and furnished material to the extent of $1,050. He described the improvements, and said that at the time the lien was executed neither Brown nor any one else had ever told him anything about a purported deal between Brown and Markham in view of which the property was conveyed to Markham for the purpose of acquiring a loan on it; that he never heard anything of it until it was mentioned in a foreclosure suit against Markham a few years later; that Markham came to him alone and asked if he would make improvements, saying that he had the consent of a loan company to make a loan on the property for improving it. Markham said he had purchased the property; that witness went to Price's office and asked him about it, and was informed that the company would make a loan of around $1,500, and stated that he had purchased the C. L. Brown property; that he had no information whatever which would lead him to believe that the deal between Brown and Markham was simulated, but thought it was bona fide in every respect; that he would not have accepted the lien if he had known the facts; that after the loan failed to go through, Markham asked witness if he would go ahead and carry it on. Witness said he would if Markham would make substantial payments on it. Markham then said that Brown was paying rent and would turn the rent of $25 a month over, and that was the way it was carried. Six or eight months' rents were paid under that agreement. Witness required the insurance policies to be delivered to him; that he collected some rent from Brown himself. Witness said he bought the property in for Shamburger Lumber Company at the time of the sale in 1933 under the judgment, after which time he leased the property to Brown for $12.50 a month for about a year, and then raised it to $15; that Brown paid the rent regularly, but had paid no rents since the law suit was filed; that Shamburger lived in Wichita Falls and there was no one living in Brownfield who had authority to speak or act for Shamburger or the company except the witness; that the witness had known Brown since 1917 and Brown resided on the property during all that period. He further stated that he paid taxes on the property for the Shamburger Lumber Company to the state, county, city, and school district; that he had contracted with a Mrs. Davis to sell her the property, and Brown signed an agreement to give possession if the sale was consummated, and told witness he would move into the streets before he would prevent the deal with Mrs. Davis, and if nothing else could be done he would move into the country into some house.

The court did not file findings of fact or conclusions of law, but has evidently accepted May's testimony as true.

■ The probate proceedings through which Markham acquired the property have not been attacked by the appellant except upon the ground of fraud. Brown, as guardian, made an application to sell the wards' interest in the property for the education and maintenance of said wards. The proceedings seem to be regular, and the guardian was authorized to sell the children's interest for the purpose stated. R.S. art. 4195; Ridling v. Murphy (Tex.Com.App.) 228 S.W. 165. The orders of the court show that Brown was given legal authority to make the sale, for cash, and the sale was thereafter duly confirmed. However, if fraud existed, the sale could have been set aside in an action by the wards, or in their behalf, for that purpose, but Shamburger Lumber Company has asserted that it is an innocent lienholder, without notice of any fraud on the part of the guardian or Markham, and since there is nothing upon the face of the record to charge the company with notice, their good faith cannot be impeached.

■■ It is an established rule that purchasers of property sold under orders of the probate court are protected as innocent purchasers where they have no knowledge of any fraud and the probate proceedings through which they acquired title are regular. Barnes v. Hardeman, 15 Tex. 366, and authorities cited. The above-cited statute confers jurisdiction upon the probate court to make the sale of the property, and while such orders may be collaterally attacked, they cannot be set aside in a collateral attack as against an innocent lien holder and purchaser for value.

We find no reversible error, and the judgment is affirmed.