STATE OF MISSOURI at the relation of T. J. WILKERSON, Judge of The Probate Court of Dallas County, and W. T. FINLEY, Relators, v. C. H. SKINKER, Judge of the 18th Judicial Circuit and of the Circuit Court of Dallas County.—126 S. W. (2d) 1156.

Division Two, March 15, 1939.

360

*J. Francis O'Sullivan, Herman Pufahl, James P. Hawkins* and *Ladner & Livingston* for relators.

*Lamm & Barnett, Letcher D. King* and *Kirby, King & Overshiner* for respondent.

COOLEY, C.—This is an original proceeding in this court in prohibition. Our provisional rule issued to which return has been made. The facts are admitted.

On August 16, 1938, information was filed in the Probate Court of Dallas County alleging that W. T. Finley, a resident of said county, was a person of unsound mind and incapable of managing his affairs and praying that an inquiry thereinto be had, as authorized by Section 448, Revised Statutes 1929 (Mo. Stat. Ann., p. 281). [Except as otherwise specifically noted, reference to statutory provisions hereinafter will be to Revised Statutes of 1929 and to corresponding sections in Missouri Statutes Annotated.] Notice was duly given and a hearing was had before the court and a jury on August 17, 1938. The jury found Finley to be a person of unsound mind and incapable of managing his affairs. Pursuant to the jury's finding the probate court so adjudged and appointed for Finley a guardian of his person and estate, to-wit, Charles Farrar, who duly qualified. No question is raised as to the regularity of those proceedings or as to the fitness of Farrar to act as guardian. No appeal was taken from said adjudication. Mr. Finley was committed to the State Hospital for the Insane at Nevada. About a month later, to-wit, on September 16, 1938, said Finley filed in the probate court an affidavit, as provided by Section 493, alleging that he had been restored to his right mind and praying the court to inquire thereinto. A similar affidavit was filed

at the same time by Carl H. Livingston, a friend and neighbor of Finley. The probate court held a hearing (without a jury), as authorized by said Section 493, and found and adjudged that Finley had been restored to his right mind since the original adjudication of insanity and ordered that he and his estate be discharged from custody and that the guardian turn over Finley's property and settle his accounts and that upon so doing he be discharged. Up to this point there is no controversy·as to the regularity or formal sufficiency of the proceedings.

On the same day on which the adjudication of restoration to sanity (if for convenience we may so term it) was made, Gertrude Henderson, a sister of Finley, and Farrar, the above-mentioned guardian and curator, filed in the probate court their joint affidavit for appeal from said judgment of restoration, praying an appeal to the circuit court. The probate court, Judge Wilkerson presiding, refused to grant the appeal prayed for, or to fix the amount of appeal bond, holding that under the law no appeal lies from such judgment. Said affiants, Henderson and Farrar, then petitioned Hon. C. H. Skinker, Judge of the Circuit Court of Dallas County, to issue a writ of mandamus commanding Judge Wilkerson, Probate Judge, to fix the amount of appeal bond and to grant the appeal prayed for to the circuit court. An alternative writ of mandamus issued. Judge Wilkerson filed return thereto. The circuit court, Judge Skinker presiding, held a hearing and took the matter under advisement. Thereafter, having considered the matter, Judge Skinker notified the parties he had decided to issue the peremptory writ of mandamus commanding Judge Wilkerson to grant the appeal and certify the record to the circuit court, and named a date when judgment in the mandamus proceeding would be entered in the circuit court. Judge Wilkerson and said Finley, relators herein, then instituted in this court the present proceeding to prohibit Judge Skinker, Judge of the Circuit Court, respondent herein, from issuing and enforcing the peremptory writ of mandamus, as said circuit court is threatening to do and will do unless prohibited by this court.

In the instant proceeding the parties raise no procedural issues, nor do they question either the propriety of mandamus to compel the granting of the appeal prayed for from the probate to the circuit court if, in the circumstances, an appeal lies under the law, or the appropriateness of prohibition if the right of appeal does not exist. The issue presented for our decision is, whether or not an appeal lies from the probate court to the circuit court when the probate court has adjudged that a person, previously adjudged by said court to be of unsound mind and placed under guardianship, has been restored to his right mind and the guardianship terminated.

It is conceded that the right of appeal is statutory; also that prior to 1921 there was no appeal from a finding and judgment of the

probate court that a person was of unsound mind and appointing a guardian. [See In re Crouse, 140 Mo. App. 545, 120 S. W. 666; State ex rel. Nolte v. McQuillin, 246 Mo. 586, 151 S. W. 444.] Relators insist that no right of appeal existed in favor of anyone. Respondent argues that while the above cases held ·that no appeal lay from an adjudication of *insanity* they did not necessarily conclude the question of whether an appeal would lie, as from a final judgment, where the person alleged to be insane was found and adjudged to be sane, because a decree adjudging a person to be of unsound mind, unlike ordinary judgments, by statute remains "*in fieri,* like a suit pending, and may be reopened and set aside at any subsequent term of the court when the insane person shall be restored to his right mind," (McQuillin case, supra, 246 Mo. l. c. 595), while a finding and judgment of *sanity* is a finality, putting an end to the proceeding, and therefore appealable under statutory provisions allowing appeals generally from all final judgments. This question, not heretofore distinctly ruled by this court so far as we are aware, is interestingly and ably presented, but for the present we pass it. If necessary we shall advert to this argument later.

The question before us must be determined in the light of our statutes. In 1921 the General Assembly enacted what is now Section 285, reading:

"Sec. 285. *Appeals allowed from finding as to mental condition.*

"Appeals shall be allowed from the probate court to the circuit court in all cases in which the judge of the probate court, or a jury in said court, has made a finding in the matter of an investigation of of the mental condition of anyone alleged to be insane, and the affidavit for such appeal may be made by any attorney for the person alleged to be insane, or by any relative of such person, or any reputable citizen of the county in which the hearing occurred and such appeal shall be taken within twenty days of the. finding of said· court or jury."

That section was then a new section, designated as Section 282a (R. S. 1919), and entitled "An Act to amend Art. 12, of Chapter 1 of the Revised Statutes of the State of· Missouri, 1919, by enacting a new section numbered 282a regarding appeal from probate courts." At that time Article 12, of Chapter 1, Revised Statutes 1919, was what is now Article 12, Chapter 1, Revised Statutes 1929. Said Chapter 1 deals with the whole subject of "Administration,"—Administrators and Executors, Guardians and Curators of Insane Persons, etc. Section 282 of the 1919 statutes (now Sec. 284, R. S. 1929), provided for appeals from the probate court to the circuit court in various matters, but did not include appeals from adjudications of insanity. The Crouse and McQuillin cases, supra, were decided while said 1919 statute (or its predecessor, of like import), was in force. Sec. 282a, Revised Statutes 1919; was, as above indicated, a ·new sec-

tion, amending or adding to said Article 12 of Chapter 1, Revised Statutes 1919, and is now Section 285, part of Article 12, Chapter 1, Revised Statutes 1929.

Section 493, Revised Statutes 1929, supra, reads:

"Sec. 493. *Proceedings on recovery of party.*

"If any person shall file in the probate court of any county in this state an allegation in writing, verified by oath or affirmation, that any person who has heretofore been declared by such court to be of unsound mind, or insane, has been restored to his right mind, the court shall hold an inquiry as to the sanity of such person: *Provided,* that if the court, upon such inquiry, shall find that such person is not restored to his right mind, and such person, or anyone for him, shall, within ten days after such finding, file with the court an allegation in writing, verified by oath or affirmation, that such person is of sound mind and is aggrieved by the action and finding of the court, the court shall then cause the factors to be inquired into by a jury."

Section 494 provides that if it be found that such person has been restored to his right mind he shall be discharged from care and custody and the guardian shall settle his accounts and restore to such person his property. It seems to be conceded that under Section 285, supra, an appeal will lie by or on behalf of the alleged insane person from an adjudication of insanity by the probate court. And in Hamilton v. Henderson (Mo. App.), 117 S. W. (2d) 379, it is said that "Sections 1938, 285 and 292, Revised Statutes 1929) Mo. Stat. Ann. . . . pp. 2605, 181, 184, provide for appeals from judgments of probate courts against a finding of restoration, as well as from the original adjudication of insanity and that a trial *de novo* of his sanity shall be held in the appellate (circuit) court." Said Section 1938 is part of Article 3, entitled "Circuit Courts," of Chapter 9, "Courts of Record," Revised Statutes 1929. Subdivision four thereof reads that circuit courts shall have "Appellate jurisdiction from the judgment and orders of county courts, probate courts and justices of the peace, in all cases not expressly prohibited by law, and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind." Section 292, referred to above, provides that upon the filing of a transcript and papers (on appeal from a lower court, as the probate court) the court having appellate jurisdiction (as in such case the circuit court) shall be possessed of the cause and shall try and determine the cause *de novo.* It has no particular application here, except to show, which is not denied, that if an appeal lies in the instant case the cause or question at issue is triable *de novo* in the circuit court. It is not quite clear whether in Hamilton v. Henderson, supra, the court meant to hold that an appeal lies from a judgment *of restoration,* under Section 493, or whether the court meant that an appeal lies in behalf of the person previously ad-

judged to be insane if the finding is against him on the question of restoration. It seems clear, however, that the court meant at least to hold that an appeal lies if such finding is against the person seeking a judgment of restoration, the same as it would unquestionably lie in his behalf under Section 285 from the original adjudication of insanity. [See, also, Moberly v. Powell, K. C. Court of Appeals, 86 S. W. (2d) 383.] And this, we think, is undoubtedly true.

In In re Bearden (Rhea v. Young), Mo. App., 86 S. W. (2d) 585, the Springfield Court of Appeals recognized, but without discussion, the right of appeal by the guardian of a person previously adjudged insane from the judgment of the probate court adjudging, under Section 493, supra, that such person had been restored to sanity. The only difference between the facts of that case and those of the instant case is that in said Bearden case the probate judge, on a hearing as provided by said Section 493, without a jury, had decided adversely to the sanity of Bearden and on trial before a jury, under said section, the jury found that Bearden had been restored to his right mind. Judgment was entered according to the jury's verdict, from which judgment the guardian appealed to the circuit court, where a like result was reached, and the guardian appealed to the Court of Appeals. Said difference in the facts makes no difference in principle regarding the question of the right of appeal. The question of the guardian's right to appeal was apparently not raised and is not discussed in the Court of Appeals' opinion, and relators say the case is not, therefore, to be considered as authority for holding that such right exists. However, since the court decided the case on the merits it evidently recognized the existence of such right.

In Harrelson v. Flournoy, 78 S. W. (2d) 895, the Kansas City Court of Appeals recognized that a person previously adjudged of unsound mind had the right to appeal from a finding and judgment adverse to him on the issue of restoration under Section 493. In that case, after referring to other sections of the statutes relating to guardians and curators of insane persons, the court made this observation (78 S. W. (2d) l. c. 901), which we think pertinent here:

"It necessarily follows that, upon this inquiry under Section 493, upon alleged restoration to rightness of mind or discharge from guardianship, the same issues as to sanity or insanity at the time of the later inquiry and as to the capacity of the subject to manage his affairs are in question as were in question upon the previous inquiry under Section 448 upon the original inquiry under which he was adjudicated to be a person of unsound mind and incapable of managing his affairs. The only difference in such inquiries is as to the burden of proof. In the original inquiry, the burden was upon the petitioner or informant seeking the adjudication of appellant's unsoundness of mind. In the later inquiry, the burden was upon the appellant, the petitioner who seeks his discharge, to show his res-

toration to his right mind. Upon the previous inquiry, the informant charged, and it was adjudicated, that appellant was a person of unsound mind and incapable of managing his affairs. Clearly, inasmuch as the later inquiry is for the purpose of avoiding the adjudication upon the previous one, where the proof warrants, it is necessary, in order so to warrant, that it be made to appear that the situation upon which the former adjudication rests no longer exists.''

In In re Tannory (Wells v. Tannory et al.), 2 S. W. (2d) 189, the St. Louis Court of Appeals upheld the right of appeal on behalf of a person adjudged by the probate court to be of unsound mind. The affidavit for appeal was made by the husband of the alleged insane woman, in the capacity of a ''reputable citizen of the county.'' On trial *de novo* in the circuit court the alleged insane woman was found and adjudged to be of unsound mind. From that judgment the original informant (in the probate court) appealed to the Supreme Court, which court transferred the cause to the St. Louis Court of Appeals (297 S. W. 967). The latter court decided the case upon the merits, holding that the appeal had been properly taken.

Relators claim that this court in State ex rel. Townsend v. Holtcamp, 330 Mo. 1101, 55 S. W. (2d) 428, said in effect that prior to the enactment of Section 285 no right of appeal existed on behalf of anyone from an adjudication on the question of sanity or insanity in the probate court, and that said Section 285 gave the right of appeal only to or on behalf of the alleged insane person. Relators quote, 330 Mo. l. c. 1107, 55 S. W. (2d) 431 ''. . . that as late as State ex rel. v. McQuillin, 246 Mo. 586, 595, 151 S. W. 444 (decided in 1912), this court held that no appeal lay from a decree of a probate court adjudging a person to be of unsound mind. The evident purpose of the enactment of 1921 (Laws of 1921, p. 124) was to supply this defect : . . .'' It is argued that we there in effect said that the purpose of said 1921 Act—Section 285—was only to supply the ''defect'' in the former statutes of failure to provide for appeal by or on behalf of the alleged insane person. But counsel do not quote all we said on that subject. In that case the right of appeal from *any* final judgment, as provided by Section 1938, supra, was referred to, as well as the statutory provisions regarding guardians and curators of insane persons. The whole of the sentence relative to present Section 285, as appearing in said Holtcamp case, reads, 330 Mo. l. c. 1107, 55 S. W. (2d), l. c. 431:

''The evident purpose of the enactment of 1921 (Laws 1921, p. 124) was to supply this defect *or set at rest any question as to the existence of the right to appeal from 'a finding' or judgment finally disposing of such a case in the probate court.''* (Italics ours.)

Said case did not decide, directly or inferentially; that an appeal does not lie from an adjudication of restoration to sanity under Section 493. Nor have we been able to find or been cited to any

Missouri case that does directly decide that question. The Bearden case, supra, is in point but, as we have indicated, the court's attention does not appear to have been directed to that question and it may not have been given consideration. We must deal with the precise question under consideration as one of first impression in this State.

Decisions of other jurisdictions are called to our attention, but they cannot be of great help, because they are based upon statutory provisions different from ours, and they recognize that the right of appeal is statutory and must be determined in the light of applicable statutes. To illustrate:

Relators cite, among other cases, In re Erickson (Kan.), 180 Pac. 263, holding that no appeal lies from a judgment of *sanity* in the probate court. The opinion says that the statute allows an appeal by or on behalf of the alleged insane person, but if such person be found sane and discharged, the discharge, while, perhaps, having some of the elements of finality, does not give a son (and prospective heir), a right of appeal, he not being, in the legal sense, aggrieved. Turning to the Kansas statute then in force and referred to in the opinion, Section 6101, Kans. Gen. Stat. 1915, we find that it provides that appeals may be taken (from the probate court) to the district court, "by or on behalf of such person (alleged incompetent) from such finding and decision *against him*. . . ." (Italics ours.) The Kansas court necessarily considered and gave effect to said statute.

Relators cite, also, Nimblet v. Chaffee, 24 Vt. 628, a case cited with approval in several other cases cited by relators. In that case it was held that no appeal lay from a judgment of the probate court refusing to appoint a guardian for an alleged insane person. The court held that the Vermont statute gave the right of appeal to the alleged insane person but, by implication, applying the maxim *expressio unius est exclusio alterius,* denied it where the judgment was in favor of the sanity of the person under investigation. The court added that there was sound reason for the distinction and stated the reasons. Relators quote the reasoning of the court. Courts of other jurisdictions have quoted it or referred to it with approval. Reasons contra might be urged, as we shall note later. But we note here that the Vermont decision was really based upon the court's construction of the statutes of that State, and recognized that the right of appeal in lunacy proceedings was statutory, as do all the cases cited to us, both from this and from other jurisdictions. It is the general rule.

We must look to our statutes, and particularly to said Section 285. Under subdivision four of Section 1938, supra, it might be plausibly argued, and is earnestly and ably urged, that an appeal would lie in the circumstances of this case, as from a *final* judgment,

(and not expressly prohibited by law), because a judgment of restoration, under Sections 493 and 494, ends the proceeding—*terminates that cause*—in the probate court. A new proceeding might be instituted, if facts seemed to warrant, but the one previously instituted is ended. Hence the judgment of restoration and discharge, contemplated by said Sections 493 and 494 would seem to be final. But we do not place our decision on that ground. We think Section 285, supra, authorizes the appeal herein involved.

Said statute says an appeal shall be allowed *in all cases* in which the judge of the probate court or a jury has made a finding in the matter of an investigation *of the mental condition* of anyone alleged to be insane. The language is broad and inclusive. By no fair construction can it be said to be limited or restricted to the alleged insane person. Relators argue that it is so limited by the words "alleged to be insane" which they contend mean "alleged,"—stated—in terms in the particular proceedings—as in the original information by which the first inquiry is instituted in the probate court. Even if that were true it would seem that an appeal from the original adjudication, whether of insanity or sanity, would be within the express terms of the statute. But we do not think the statute can be thus narrowly construed. In the original proceeding the subject of inquiry was of necessity formally alleged, in the information filed in the probate court, to be of unsound mind and incapable of managing his affiairs. The adjudication of such mental unsoundness is not *final*. The cause remains *in fieri* subject to be further investigated if and when it may be claimed—under Section 493—that the "alleged"—and adjudged—insane person has been restored to sanity. [McQuillin case, supra.] Meantime the subject of inquiry is still "alleged,"—claimed—call it by what name you please—to be of unsound mind. Nay, more, he is presumed so to be and the burden of proving the contrary rests upon him in the proceedings for restoration under Section 493. [Harrelson v. Flournoy, supra.] So when an allegation of restoration is filed, under Section 493, the person previously adjudged insane and by whom or on whose behalf such allegation is made, is still "alleged" or claimed to be insane. The finding and judgment of the probate court that he has been restored to his right mind is certainly a "finding in the matter of an investigation of the mental condition" of such person.

It is argued, and with force, that an adjudication of insanity imposes harsh restrictions upon the person adjudged to be insane, depriving him of the right to personal liberty and the right to manage and control his property and affairs and to pursue the usual course of happiness accorded to free men. And this is true. [See Ruckert v. Moore, 317 Mo. 228, 295 S. W. 794.] But it is also true that in these lunacy proceedings, the State, as *parens patriae*—the community—society—has an interest, both to protect the insane per-

son and to protect the public from possible injury and to the end that such person may not, through mental incapacity, waste his estate and become a charge upon the public. [See State ex rel. Paxton v. Guinotte, 257 Mo. 1, 165 S. W. 718.] It is suggested that if, after an adjudication of restoration, under Section 493, the subject should develop or exhibit symptoms of mental unsoundness a new information might be filed—a new proceeding instituted—in the probate court. Of course that could be done. But it is only natural to suppose that it would not likely be done without some new and additional manifestations of insanity, since the new inquiry would have to be before the same court that had adjudged the subject to be restored to his right mind; and in the meantime such person, if in fact of unsound mind, might have done irreparable harm to himself and his estate, or perhaps to others. For discussion of this thought see Tierney v. Tierney (Neb.), 115 N. W. 764, 15 L. R. A. (N. S.) 436. But it is not for us as a court to determine the wisdom *vel non* of the statute. Our province is to construe it. We think it was intended to give and does give the right of appeal from a judgment of restoration under Section 493, as well as from a judgment adverse to the alleged insane person. Questions of the hardships that might thus be entailed upon such person by being kept under guardianship during litigation of the question, perhaps long drawn out, address themselves properly to the legislative branch of government.

 Much is said in relators' brief to the effect that the sister and the guardian, who filed the affidavit for appeal from the probate court, are not "aggrieved" within the meaning of the law and are not entitled to appeal in any event. A number of cases from other jurisdictions are cited to sustain that argument. Generally, it is true, a person must be "aggrieved" in the legal sense in order to be entitled to appeal. It was so held in the cases cited from other jurisdictions and is so held in this State. But since, concededly, the right of appeal is statutory, if, as we hold, the statute in question gives the right of appeal from a judgment of restoration we see no reason why the Legislature may not prescribe by whom the affidavit for appeal may be made, as it has done. Indeed, the provision that such affidavit may be made by, among others, a relative or by "any reputable citizen of the county" would seem to indicate a legislative intent that an appeal should lie from a judgment of restoration, as on behalf of the State or the public as the "aggrieved" party. But we shall not further consider the matter of procedure. The parties hereto ask us to decide the case on the basic issue of whether or not an appeal lies, under the statute, from a judgment of restoration under Section 493. We hold that it does. If follows that the circuit court has jurisdiction and our provisional rule in prohibition should be dissolved and the permanent writ prayed for refused. It is so ordered. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Tipton* and *Ellison, JJ.*, concur; *Leedy, J., dubitante.*