**FINLEY v. HARTSOOK et al.**
Nos. 259, 260.

District Court, N. D. Texas,
Wichita Falls Division.

Nov. 29, 1945.

98

A. B. Honnold, of Tulsa, Okla., Frank B. Williams, of Springfield, Mo., and C. C. McDonald, of Wichita Falls, Tex., for Plaintiff.

Leslie Humphrey and Frank Ikard, both of Wichita Falls, Tex., for C. R. Hartsook and O. C. Egdorf.

Dan Abbott, of Abilene, Tex., for Letcher D. King and Harry Tom King.

James C. Wilson, Jr., of Fort Worth, Tex., for Maryland Casualty Co.

ATWELL, District Judge.

This suit was instituted in 1945 against C. R. Hartsook and O. C. Egdorf by W. T. Finley's living trustee, F. B. Williams. The defendants impleaded under the rules, Letcher D. King, Harry Tom King, Maryland Casualty Company and Frank B. Williams.

In the spring of 1938, W. T. Finley, a resident of Missouri, began to make leases, assignments and deeds to portions of 266 acres of land which he owned in Archer County, Texas. The first was to B. A. Cockrell and in a short time many interests had passed to individuals and companies.

At that time there was only one well on the south side of the 266 acres, and a dry hole which seemed to limit the potential in another direction. The oil activity had, however, begun to attract attention and shortly thereafter another well was projected.

Finley was an elderly man and, apparently, then and now, mentally incapable of attending to his own affairs. After this activity had put a large part of his property in other hands, he was adjudicated, on August 17, 1938, in Missouri, to be a person of unsound mind, and Charles Farrar was appointed guardian of person and estate.

On September 23, 1938, the court in which the guardianship had been instituted, pronounced Finley mentally restored. From that pronouncement appellate proceedings were instituted and prosecuted. That left the insanity judgment in effect. Moore v. Jordan, 65 Tex. 395; McFarland v. Mooring, 56 Tex. 118; Earl v. Mundy, Tex.Civ.App., 227 S.W. 716; State ex rel. Baker v. Bird, 253 Mo. 569, 162 S.W. 119, 120 Ann.Cas.1915C, 353; so hold, for both Texas and Missouri.

While the appellate proceedings were pending, there was instituted in the United States District Court, in this division, a suit by Farrar, as guardian, against Cockrell and all of the lease and deed holders, including several oil companies.

There were several attorneys for the plaintiffs, one of whom resided in Wichita Falls, Texas, who is also an attorney in the present case, for the plaintiff, Finley. Out of that litigation, which was by agreement transferred to the Dallas division, came a final decree after several hearings and motions had been passed on, wherein the effort was made to secure the dismissal of the cause by the defendants, but it appeared

that the adjudication of mental incapacity had never been set aside by a final judgment in Missouri, and all efforts to have the cause dismissed were denied by this court.

It now appears from this record that prior to the institution of the suit in this court, Farrar had hired, on a contingent basis, an attorney in Texas, to bring a suit for the cancellation of such leases, assignments and deeds as had been made by Finley, on the ground that he was mentally incapable. That attorney, Letcher King, had employed attorneys in Missouri, an attorney in Wichita Falls, and a firm in Abilene, Texas. The contingent fee was one-half of his recovery. After the decree was entered in the suit in Dallas, there was filed in the Probate Court of Archer County, under the Texas statute, an application for guardian of the estate of Finley found to be in that county. Farrar was appointed. King filed an application in that proceeding for the allowance of a fee of $15,000, apparently in lieu of the one-half of the properties recovered, as provided for in his contract. That claim was approved by guardian Farrar and was set down for hearing by the Probate judge. At the hearing, testimony was taken which included the testimony of Wilson who was one of the attorneys for one of the defendants in the suit in the United States court. The Probate court, after the hearing, approved the claim and thereafter ordered, so much of the property as in his judgment would, at private sale, net enough to pay the claim, sold for that purpose. An inventory and appraisement had been filed as provided for in the statute. Such appraisers being an abstractor in Archer City, a Deputy Sheriff who afterward became Sheriff and a Deputy Tax Collector who afterward became County Commissioner.

At the time of the sale the property was of speculative value. It might be more valuable or it might be less valuable as the future would disclose. With that prospect, an oil broker, who was a patient of one of the defendant doctors, advised the defendant that he had heard of what he thought might be a good royalty buy. This was voluntary information for which no commission was charged. Later, the sale was negotiated by another person to the two doctors, the defendants, each paying one-half of the $12,000.

As the years wore on, other development took place in that particular section of the lands and the investment proved to be a fairly good one.

When the decree was entered in the United States court early in 1939, approximately $40,000 in cash which had been deposited in that court by the various defendants, to await the result of the cause, was turned over to guardian Farrar.

About six years after the sale to these defendants, this suit was instituted by Finley, through his living trustee, F. B. Williams, to whom had been turned over the moneys, and properties, which were recovered by Farrar for Finley in the United States court. The appeal proceedings having been completed in the Missouri appellate courts which concerned the original insanity adjudication of Finley, and thereafter there having been another hearing in 1940, whereupon Finley had been declared to be sane, even though the appellate court had reversed the second holding of the Probate Court in Missouri, to the effect that Finley had been restored. State ex rel. Wilkerson v. Skinker, 344 Mo. 359, 126 S.W.2d 1156, 122 A.L.R. 532; Finley v. Farrar, 351 Mo. 26, 171 S.W.2d 593. Therefore, the final restoration of Finley left the way open for him to again seek to place his affairs in the hands of a trustee, as testified by him in this cause, and he chose to execute a living trust wherein Williams was made the trustee and attorney.

Williams now brings this suit as such trustee for Finley, attacking the action of the Probate Court in Archer County as fraudulent and ancillary to the proceedings in the Probate Court of Missouri. He also attacks the activities of King, contending that King's father, Harry Tom King, was the purchaser at the guardian's sale ordered by the Probate Court of Archer County, and the transferrer of the title to the defendants.

This brief, rather summary picture of this struggle for the possession and benefits growing out of an oil discovery, will aid in an understanding of the claims of the plaintiff and the position of the defendants.

First. The plaintiff claims the guardianship in Texas was ancillary, and not general. Second. That the sale made in Texas was secret and fraudulent. Third. That King's fee was exorbitant.

The defendants answer, that the Texas guardianship was general and not ancillary. Second. That the sale was neither secret nor fraudulent. Third. That the fee, con-

sidering the work done, and the number of attorneys employed was reasonable. Fourth. That the plaintiff was guilty of laches, since the lands were of speculative value at the time they bought them.

The amount which they bought was one-fourth of one-eighth of the royalty. This was on July 8, 1939. Since that date they have been receiving their part of the proceeds from the oil runs from the property. Finley and his trustee have been receiving the remainder with the exception of some small interest which Finley's sisters seem to have secured. The amount that the defendants have received is approximately $20,000. The amount that Finley has received, is, of course, greater. Under the trust which Finley executed to trustee Williams, who brings this suit, Williams is to receive a percentage on recovery and fees for conducting litigation in behalf of the trust.

(a) It seems to be proper to study the guardianship proceedings in Texas in the light of the Texas statute, relating to such matters. Article 4285, Vernon's Ann.Civ. St. of Texas; Herndon v. Vick, 18 Tex. Civ.App. 583, 45 S.W. 852.

■ About that Section, the Court of Civil Appeals in American Surety Co. v. Fitzgerald, 36 S.W.2d 1104, speaking through Judge Looney, an able reasoner and supported by other Texas authorities, has held it to be a general guardianship and not an ancillary guardianship even though an application therefor must be supported by certified copies of the anterior proceeding in the foreign jurisdiction. See also Hare v. Pendleton, Tex.Civ.App., 214 S.W. 948, 954. This court need go no further than that. It is bounden by the Texas rule.

■ (b) There is no support, either in the proceedings, or in the facts, to authorize the contention that the sale was either secret or fraudulent. The sale was ordered to pay a debt. The statute gives that right. The hearing on the application and the determination of its reasonableness was in open court after a definite setting. Testimony was taken and the judgment was entered. A motion by Finley's counsel was made for a review and no presentment of the motion nor further steps taken in that direction by the counsel presenting it.

■ The attorney's fee in such a proceeding is a debt which under the statute and Texas decisions may be ordered paid. Hare v. Pendleton, 214 S.W. 948, 954.

■ (c) Neither can the plaintiff be successful in his contention that the fee allowed to King was exorbitant. The facts disclose a successful harvest of Finley's properties including both lands and moneys; the apparent work and effort of reputable attorneys in both Missouri and Texas. In addition to this merit, the plaintiff is foreclosed by the fact that this identical matter was within the jurisdiction of the Probate Court of Archer County and may not be gainsaid in any other tribunal. Bearden v. Texas Co., Tex.Civ.App., 41 S.W.2d 447; Goolsby v. Bush, Tex.Civ. App., 172 S.W.2d 758.

■ (d) A purchaser at a Probate sale in Texas, regular on its face, is protected as a bona fide purchaser. Brown v. Shamburger, Tex.Civ.App., 104 S.W.2d 112, 113; Jones v. Sun Oil Co., 137 Tex. 353, 153 S. W.2d 571; Simpson v. Booth, Tex.Civ. App., 163 S.W.2d 1080; Gardner v. Union Bank and Trust Co., Tex.Civ.App., 159 S. W.2d 932; Lomax v. Comstock, 50 Tex. Civ.App. 340, 110 S.W. 762.

■ (e) A conscionable consideration of the testimony which surrounds the careful and reasonable steps taken by Hartsook and Egdorf in the expenditure of their savings in this particular speculative venture, the knowledge of such purchase by the plaintiff in the present case, the length of time that has elapsed since that purchase, gives a healthy birth to the doctrine of laches. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328; McMan Oil & Gas Co. v. Hurley, 5 Cir., 24 F.2d 776; Garcia et al. v. Jones et al., Tex.Civ.App., 155 S.W.2d 671.

(f) There being no apparent reason for any relief against the impleaded defendants, they should go with their costs. The two main defendants may have a decree against the plaintiff.