**FINLEY v. HARTSOOK et al.**

No. 11615.

Circuit Court of Appeals, Fifth Circuit.

Dec. 17, 1946.

Rehearing Denied Jan. 13, 1947.

Frank B. Williams, of Springfield, Mo., and A. B. Honnold, of Tulsa, Okl., for appellant.

Leslie Humphrey, of Wichita Falls, Tex., James C. Wilson, Jr., of Fort Worth, Tex., and Dan Abbott, of Abilene, Tex., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This suit involves the validity of a sale of mineral interests in land in Texas by a foreign guardian of a non-resident ward, acting under authority of the probate court of the county in which the land was situated.

In the early spring of 1938 the appellant, a resident and citizen of Missouri, executed several conflicting oil and gas leases and agreements to different parties covering 266 acres of land owned by him in Archer County, Texas. He also disposed of royalty acreage and of oil payments provided for in one of the leases. In August, 1938, he was adjudged of unsound mind by the probate court of his home county, and one Charles Farrar, of Missouri, was appointed guardian of his person and estate. In the latter part of September of that year the same court adjudged him mentally restored. From this last judgment, Farrar, as guardian, appealed. While the appeal was pending, Farrar upon allegation that appellant was mentally incompetent, as his next friend and guardian, filed a suit in a federal court in Texas seeking cancellation of the leases, agreements, and deeds executed by appellant in the spring of 1938 affecting the 266 acres. A compromise judgment was entered in April, 1939, in said suit, setting aside certain leases and agreements and a deed to a royalty interest and sustaining a lease of the same period and awarding a recovery of certain oil payments to appellant. In May, 1939, Farrar, as Missouri guardian, petitioned the county court of Archer County, Texas, having probate jurisdiction, to be appointed ancillary guardian of the estate of his non-resident ward in that county. An authenticated transcript of the Missouri probate proceedings was attached. The petition was granted, and Farrar was appointed and qualified as guardian of appellant's estate in Archer County, Texas. A few days later Farrar made application to sell for cash at private sale certain oil payments and an interest in the royalty owned by his ward to pay the attorney's fee, which he had approved, due for prosecuting the "as next friend" suit. The county court of Archer County granted the application, and in due course Farrar, as guardian, sold the oil payments and a quarter interest in appellant's royalty in the 266 acres; the county court confirmed the sale. The oil payments and the royalty interest were later by the purchaser assigned for value to appellees Hartsook and Egdorf.

620

Nearly six years later, appellant, upon being restored to his competency, brought in the court below the present suit against appellees, residents and citizens of Texas, to set aside and cancel the sales of the mineral interests made in the Texas guardianship proceedings and the assignment of said interests by the purchaser thereof to appellees Hartsook and Egdorf, and also for an accounting for rents and profits. The main grounds alleged were: (1) The appointment of Farrar as foreign guardian to appellant by the county court of Archer County, Texas, was void, as the transcript showed an appeal pending from the Missouri probate court judgment restoring appellant to his competency, and hence, the transcript showed that the Missouri guardianship was suspended. (2) The county court of Archer County, Texas, did not have the jurisdictional authority to appoint a Missouri guardian as general guardian of the estate of the appellant in Texas. (3) Since the Texas appointment was fraudulent and void, the procurement of an allowance in a probate court of an attorney's fee for services rendered in the "as next friend" suit was contrary to law. (4) The county court of Archer County, Texas, was without authority to authorize the sale of appellant's property to pay the attorney's fee arising out of the "as next friend" suit or to confirm such sale; the court's jurisdiction was limited to authorizing a sale solely for the purpose of removing the proceeds to the State of appellant's domicile. (5) Appellant and his Missouri attorney had no notice of the Texas probate proceedings. (6) Appellees Hartsook and Egdorf, who acquired from the purchaser at the guardianship sale, were not innocent purchasers.

Appellees denied the lack of jurisdiction in the county court of Archer County. They alleged that the Texas guardianship was general, not ancillary; that they were innocent purchasers; and that appellant was guilty of laches.

After a trial to the court, judgment was entered denying relief to appellant and quieting the title of appellees Hartsook and Egdorf to the property sold at the guardianship sale. Appellant prosecuted this appeal.

There is little conflict in the evidence; only questions of law are involved. In Texas, when a person has been declared to be of unsound mind by a probate court, an appeal in a subsequent proceeding from a judgment pronouncing him restored to competency is a trial de novo;[1] it suspends such judgment, leaves in effect the original adjudication of mental incompetency, and leaves the incompetent under guardianship.[2] In the absence of allegation and proof to the contrary, the Texas probate court could presume the Missouri probate law to be in accord with the local law.[3] Hence, the Texas probate court, applying the Texas law in such matters, could disregard the judgment of the Missouri probate court restoring the appellant to his competency, as that judgment, suspended by the appeal, in no way affected the original adjudication of mental incompetency of the appellant or Farrar's appointment as his guardian. Moreover, in Missouri, as in Texas, an appeal from a probate court judgment does involve a trial de novo and apparently does suspend the probate court judgment. Referring to the Missouri statutory law, the Supreme Court of Missouri, in State ex rel Wilkerson v. Skinker, 344 Mo. 359, 366, 126 S.W.2d 1156, 1158–1159, said: '"* * * in Hamilton v. Henderson, [232] Mo.App. [1234,] 117 S. W.2d 379, 383, it is said that 'Sections 1938, 285 and 292 [R.S.1929], Mo.St.Ann. * * * pp. 2605, 181, 184 [Mo.R.S.A. §§ 2100, 284, 291] provide for appeals from judgments of Probate Courts against a finding of restoration, as well as from the original adjudication of insanity, and that a trial de novo of his sanity shall be held in the appellate (circuit) court.' Said Sec. 1938 is part of Art. 3, entitled 'Circuit Courts,' of Chapter 9, 'Courts of Record,' R.S.1929. Subdivision four thereof reads that circuit courts shall have 'Appellate jurisdiction from the judgment and orders of county courts, probate courts and justices of the peace, in all

---

1 Article 3702, Texas Civil Statutes.
2 Moore v. Jordan, 65 Tex. 395; McFarland v. Mooring, 56 Tex. 118; Earl v. Mundy, Tex.Civ.App., 227 S.W. 716.

3 Herndon v. Vick, 18 Tex.Civ.App. 583, 45 S.W. 852.

cases not expressly prohibited by law, and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics, and persons of unsound mind.' Sec. 292, referred to above, provides that upon the filing of a transcript and papers (on appeal from a lower court, as the probate court) the court having appellate jurisdiction (as in such case the circuit court) shall be possessed of the cause and shall try and determine the cause de novo. * * *.'"

In answer to the argument that an adjudication of insanity imposes great hardship on the person adjudicated to be insane, that court also said, at page 371 of 344 Mo., at page 1162 of 126 S.W.2d: "* * * But it is not for us as a court to determine the wisdom *vel non* of the statute. Our province is to construe it. We think it was intended to give and does give the right of appeal from a judgment of restoration under Sec. 493 [Mo.R.S.A. § 492], as well as from a judgment adverse to the alleged insane person. *Questions of the hardships that might thus be entailed upon such person by being kept under guardianship during litigation of the question, perhaps long drawn out, address themselves properly to the legislative branch of government.*" [Emphasis added.]

▆ We have considered whether the transcript from the Missouri probate court was sufficient to authorize the county court of Archer County, Texas, to appoint Farrar guardian of his ward's Texas estate, as that question was forcefully presented in oral argument and in brief, and as this procedure was followed in some of the Texas cases brought to our attention where the sufficiency of the record evidence in the appointment of a guardian was the subject as here of collateral attack. Cf. Carroll v. McLeod, 133 Tex. 571, 130 S.W.2d 277; Bearden v. Texas Co., Tex.Civ.App., 41 S.W.2d 447, 459, affirmed, Tex.Com.App., 60 S.W.2d 1031. The prevailing rule, however, is that, if the matter before the court is within its jurisdiction and the facts before it call for its action, and in acting it commits error, such error must be corrected on appeal. In the absence of fraud, the error may not be the basis of a collateral attack. The application of Farrar, the Missouri guardian of appellant, to be appointed Texas guardian of his ward's Texas estate (real estate) located in Archer County, Texas, gave the county court of Archer County, Texas, jurisdiction over Farrar as foreign guardian of appellant and over the real estate in Archer County owned by appellant. The county court, by the application, was called upon to make the appointment. Applying the language of the Supreme Court in Gornett v. Williams, 20 Wall. 226, 249, 87 U.S. 226, 22 L.Ed. 254, to the case before us: "* * * Jurisdiction is the power to hear and determine. To make the order of sale [here, the order appointing Farrar guardian] required the exercise of this power. It was the business and duty of the court to ascertain and decide whether the facts were such as called for that action. The question always arises in such proceedings—and must be determined—whether upon the facts as presented, affirmative or negative action is proper. The power to review and reverse the decision so made is clearly appellate in its character and can be exercised only by an appellate tribunal in a proceeding had directly for that purpose. It cannot and ought not to be done by another court, in another case, where the subject is presented incidentally, and a reversal sought in such collateral proceeding. The settled rule of law is, that jurisdiction having attached to the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud. Every intendment is made to support the proceeding. It is regarded as if it were regular in all things and irreversible for error. In the absence of fraud no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case. Infinite confusion and mischiefs would ensue if the rule were otherwise. * * *"

The county court of Archer County, Texas, acted within its authority in appointing Farrar as guardian of appellant's property in Archer County, Texas, in the ancillary proceedings brought before it. When so appointed, Farrar became general guardian of his ward's Texas estate, under Texas

law, and subject to general guardianship statutes. [4]

■ The contention that the only sale the Texas probate court could authorize was a sale made solely to effect a removal of the proceeds from the State is without merit. Articles 4286 and 4288, Texas Civil Statutes, relied on by appellant, have to do with the removal of the funds of a ward from the State by a nonresident guardian, a question not now before us. [5]

■ Proceedings in probate are in the nature of proceedings in rem. [6] Failure to give personal notice to persons affected does not void probate court orders. [7]

■ The attorney's fee complained of was incurred by Farrar while Missouri guardian in the saving and securing of property rights of his ward in Texas. Under Texas law, such fee was a debt or expense of the administration chargeable against the estate of the ward in the subsequent Texas probate proceedings. [8]

■ The value and allowance of the fee and the other alleged irregularities complained of were matters for the determination of the probate court and were foreclosed by the court's judgment; since that court had general jurisdiction of Farrar as guardian and of his ward's Texas estate, its judgments within its jurisdiction may not be collaterally attacked. [9]

The judgment appealed from is affirmed.

[4] American Surety Co. of New York v. Fitzgerald, Tex.Civ.App., 36 S.W.2d 1104; Bearden v. Texas Co., Tex.Civ. App., 41 S.W.2d 447, 459. Cf. Hare v. Pendleton, Tex.Civ.App., 214 S.W. 948, 954, on appeal to Supreme Court of Texas, 231 S.W. 334, 336, 337; Hill v. Tucker, 13 How. 458, 14 L.Ed. 223; Stacy v. Thrasher, 6 How. 44, 12 L.Ed. 337.

[5] American Surety Co. of New York v. Fitzgerald, supra.

[6] Weems v. Masterson, 80 Tex. 45, 15 S.W. 590.

[7] Hirshfeld v. Brown, Tex.Civ.App., 30 S.W. 962; McGowen v. Zimpelman, 53 Tex. 479; Murchison v. White, 54 Tex. 78; Porter v. Sweeney, 61 Tex. 213.

[8] Hare v. Pendleton, supra.

[9] Bearden v. Texas Co., supra; Goolsby v. Bush, Tex.Civ.App., 172 S.W.2d 758; Pure Oil Co. v. Reece, 124 Tex. 476, 78 S.W.2d 932.