Ruby HARRIFORD, Guardian, Appellant,

v.

Willie HARRIFORD, Respondent.

No. 23058.

Kansas City Court of Appeals.
Missouri.

June 6, 1960.

Leon G. Kusnetzky, Kusnetzky & Fridkin, Kansas City, for appellant.

Claude L. Schenck and R. A. Kelpe, Kansas City, for respondent.

CROSS, Judge.

This appeal is from a judgment of the Circuit Court of Jackson County, Missouri, restoring respondent, Willie Harriford, to mental competency. Appellant, Ruby Harriford, is respondent's wife and guardian.

■ Appellant's brief is not in compliance with Rule 1.08 (present Rule 83.05, V.A.M.R.). It does not contain a fair and concise statement of the facts relevant to the questions for determination. The appeal will be considered in the exercise of our discretion, for the reason that in proceedings of this nature, "the state, as *parens patriae,*—the community,—society,—has an interest, both to protect the insane person and to protect the public from possible injury and to the end that such person may not, through mental incapacity, waste his estate and become a charge upon the public". State ex rel. Wilkerson v. Skinker, 344 Mo. 359, 126 S.W.2d 1156, 1161, 122 A.L.R. 532.

Our review of the evidence discloses that Willie Harriford, 66 years of age, born and reared in rural Texas, began federal employment in 1921 as a meat inspector. After 32 years of commended service, he retired in 1953. He is a member of the Masonic Lodge and a member and trustee of the Trinity AME Church.

Appellant guardian, 47 years of age, a beauty operator by trade, met and married Harriford in 1948. The marriage was her third matrimonial union. The only available details of the courtship are of a financial nature.

Harriford had bought a residence on Benton Boulevard in Kansas City, Missouri, in 1947, and conveyed it to his grandson, Willie Lloyd Harriford, Jr., reserving in himself a life estate—all before the marriage in 1948.

Ruby, while looking for a rental house, learned of the Benton Boulevard property, met Harriford, and proposed to rent the place. Harriford declined, informing her the property was not in his name, but was in his grandson's name. After Ruby "prevailed and kept on prevailing", he "finally decided to let her have the place".

After a conversation in which Harriford told Ruby "she couldn't come in on that (the Benton) place", and Ruby replied, "I don't care whose name its in, all I want to do is get married", the marriage took place.

In 1951, Harriford purchased a parcel of real estate at 1614 North Tenth Street, Kansas City, Kansas, consisting of a two-unit apartment house and business building combination. Title was taken "in both of us".

Much of the evidence concerns Harriford's state of physical health, operations and complaints. Until retirement, his health was such that he missed very few days from work, although he was chronically afflicted with migraine headaches. After retirement, the migraine persisted, with increased severity, and he suffered

other afflictions. Seeking relief he consulted several doctors and clinics and entered certain hospitals.

The marriage was relatively trouble free until, in 1956, Ruby pressed Harriford to retake the Benton residence from the grandson, and convey it to her. The grandson refused to reconvey, whereupon she "became angered". Harriford proposed divorce, but she opposed such action.

Harriford voluntarily entered Neurological Hospital for treatment on January 31, 1957. While he was forcibly confined there, Ruby filed insanity proceedings against him in the Probate Court of Jackson County. In Harriford's absence, he was adjudged to be of unsound mind and incapable of managing his affairs, and Ruby was appointed his guardian. She took possession of all his property and confined him in the State Hospital at St. Joseph. Shortly thereafter, he was "paroled to Ruby", but went to live with a brother in Kansas City, Kansas.

Harriford filed restoration proceedings in the Probate Court on September 4, 1957, and on December 2, 1957, its judgment restored him to competency and discharged Ruby as his guardian. She immediately appealed from the judgment. Trial of the cause in the circuit court began September 26, 1958, and was to the court, upon waiver of a jury by Harriford and the appealing guardian.

Harriford testified relative to his physical illness, physicians consulted, treatment, operations and hospitalization. He denied any violence, threats, or any family insanity. He testified that Ruby had all his property, "everything I got", including his bank account, the Benton Boulevard residence, the income from it, his automobile, which she was using, and some of his clothing.

Harriford's sanity and competency to handle his own affairs were attested by thirteen lay witnesses, including friends, neighbors, his minister, fellow church members, church trustees, two sisters and a brother. These witnesses testified they had known Harriford for many years, had seen and talked to him frequently and regularly, that he was normal, talked sensibly, knew the extent and nature of his property and was well qualified to look after his affairs.

On behalf of Harriford, Dr. Marvin L. Bills, a neurologist, Dr. L. Virgil Miller, a physician and surgeon, Dr. Carl A. Adams, a chiropractor, and Dr. John Joseph O'Hearne, a psychiatrist, testified that Harriford was of sound mind and capable of managing his affairs. None of the foregoing witnesses had seen him after October 11, 1957.

Dr. John J. O'Hearne had examined Harriford on October 11, 1957, at the request of the Judge of the Probate Court of Jackson County, Missouri, and submitted a report filed and considered in the restoration hearing in the probate court. Called as a witness by Harriford at the trial below, Dr. O'Hearne testified that although the examination of October 11, 1957 evidenced no hallucinations, delusions, psychosis or organic brain disease, he was unable to diagnose Harriford's *present* condition. The court, on appellant's oral motion, then appointed and directed Dr. O'Hearne to re-examine Harriford.

On April 24, 1959, Dr. O'Hearne was recalled as a court appointed physician and testified that he had consulted hospital records, secured pertinent history, and had examined Harriford as instructed, from which he formed and held the opinion that Harriford was then competent, able to manage his affairs and to look after his property and himself.

The evidence on behalf of appellant consisted of testimony given by herself, a friend, a psychiatrist and a psychologist. Ruby testified concerning Harriford's illnesses and treatment, his confinement in the State Hospital at St. Joseph and his "parole" to her; that he separated from her, once struck her, frequently threatened to kill her, cried "all the time", "cried

over the telephone", carried a loaded shotgun in his car; and that he was incapable of managing his affairs.

Ruby's friend, Marguerite Graham, testified that she saw Harriford cry once, never saw any violence from him, and had heard him talk concerning his ailments. The witness stated no opinion as to his mental competency.

Dr. Rita Wetzel, the psychologist, and Dr. Paul Hines, the psychiatrist, both employed by Neurological Hospital, testified to opinions negativing Harriford's capability of managing his affairs. Dr. Wetzel had not seen Harriford for fifteen months. Nineteen months had elapsed since Dr. Hines had seen him.

Appellant charges the trial court with error in finding the issues for respondent and adjudging him restored to sanity and capable of managing his affairs, complains that such findings and judgment are contrary to the greater weight of the evidence, and urges that the judgment should have been against respondent.

■ In determining these assignments, it devolves upon us to review the case upon the law and all the evidence, under the provisions of Section 510.310, V.A.M.S. (Rule 73.01), make independent findings of fact, and determine where the preponderance of evidence lies, giving due regard to the trial court's opportunity to observe witnesses and judge their credibility. Although the trial court's findings are not here binding, its judgment will not be set aside in the absence of clear error. Under such principles this court will either affirm the judgment below or direct the entry of such judgment as justice requires.

■ The sole issue of fact is whether Willie Harriford was a person of sound mind and capable of managing his affairs *at the time of trial.* Respondent's mental condition and capability at any prior time are not in issue, and evidence relating to prior events, statements and conditions will be considered only with due caution and in accordance with established rules of evidence.

As evidence for respondent, the testimony of thirteen non-professional witnesses is before us, all tending to establish that he was restored to sanity at the time of trial, showing their regular and frequent association with him continuously to the trial, and establishing their opportunity to observe and know the subject matter of their testimony. Respondent's four medical witnesses were not so fortunately qualified, as no one of them had seen him after October 11, 1957.

■ Appellant is almost without evidence on the contested fact issue. Her own testimony, excluding her accusation that respondent once struck her, is limited to the time before he left her, which appears to be in June, 1957. Marguerite Graham, who saw respondent no later than June, 1957, gave no testimony of any substance on the issue. The testimony of appellant's professional witnesses has little weight, based as it is on observations made fifteen and nineteen months before the trial.

The only medical testimony in the case having material bearing on the issue of respondent's mental condition is the evidence of Dr. O'Hearne, given as an officer of the court and after current examination.

■ We find that respondent has sustained his burden of proof, and that the credible evidence in the trial below preponderates decisively in his favor. Specifically, on the defined issue, we find that respondent is a person of sound mind and is capable of managing his own affairs and property. Therefore, we hold that the trial court's findings were in accordance with the evidence, and were for the right party.

■ Appellant contends error was committed by the appointment of Dr. O'Hearne as the court's medical witness to examine respondent. However, appellant made no

objection to the court's action. In fact, the appointment was made in response to a motion orally made by appellant and sustained by the court. Appellant actively cooperated in carrying out the examination. It is not shown that Dr. O'Hearne was other than impartial. We find no merit in this contention of appellant.

■ Appellant also urges that the court erred by admitting Dr. O'Hearne's report in evidence. The transcript does not recite that the report was so admitted. It shows only that the court marked the report as an exhibit, and that it was filed *completely without objection*. Even if it had been read and considered by the court, no injury arose. The report was almost identical, in substance and import, with Dr. O'Hearne's testimony. Again, we find no merit in appellant's contention.

■ Appellant's final assignment of error is: "The Court erred in overruling guardian's motion for examination of incompetent because the Court refused to permit guardian to have a doctor of her choice examine the incompetent". It is predicated upon the inaccurate assumption that the court overruled the motion. The record is void of such action by the court. Appellant did present such motion, in writing, before introducing evidence, and the court deferred action until the conclusion of evidence. The motion was not again presented for ruling but was abandoned by appellant when she moved orally, at the conclusion of testimony, that "the court have Mr. Harriford examined by an institution * * *".

■ Aside from the fact the court did not deny the motion (as assumed in the assignment of error), the court had reasonable discretion to grant or deny appellant's application for an examination of her ward.

■ 44 C.J.S. Insane Persons § 55, page 154, states, "It is not error to deny an application to require the petitioner to be examined by a particular physician selected by persons opposing the discharge".

The granting or denial of a physical examination by one party of the other under Section 510.040 rests "within the discretion of the trial court". Enyart v. Santa Fe Trail Transportation Co., Mo.Sup., 241 S.W. 2d 268, 269; Grimm v. Gargis, Mo., 303 S.W.2d 43.

We find that the court did not overrule appellant's motion for an examination of respondent, and rule that no error was committed by the court as contended in the final assignment.

Finding no error before us, and in accordance with our foregoing determinations under the evidence and the law, the judgment is affirmed. It is so ordered.

All concur.